Scott et al. *v.* Keith et al.

CYRUS J. S. SCOTT AND ISAAC N. HALL, *plaintiffs in error, v.* RAWSEL R. KEITH, DANIEL BALDWIN AND ORAMEL H. SMITH, *defendants in error.*

### *Contract. Consideration. Pleading.*

Several persons, not partners, were jointly indebted to K., and three of them executed a written promise to the others that if the latter would pay K. the whole of his claim they would settle with him for their share. This promise contained no distinct words indicating a several liability on the part of the promissors. Those to whom this promise was made paid K. his whole claim, and afterwards brought assumpsit against the others, declaring upon their promise. The declaration contained no allegation that any balance had been struck or agreed upon as the share of the defendants, but merely alleged that their share was a certain sum; *Held,* on demurrer to the declaration, that the promise of the defendants to the plaintiffs was a joint, and not a several one; that it was based upon a sufficient consideration; and that the parties did not stand in such relations to each other as rendered it necessary to aver that any balance had been agreed upon as the defendants' share of the debt.

WRIT OF ERROR. The writ set forth a copy of the record of a judgment in favor of the defendants in error against the plaintiffs in error, by which it appeared that at the March Term, 1857, the former commenced an action of assumpsit against the latter and one Jacob Kent of the State of Illinois, with the following declaration:

"In a plea of the case, for that by an act of the legislature of the State of Vermont, approved November 13th, A. D. 1849, a corporation by the name of the Montpelier and Connecticut River Railroad Company was duly created, in and by which the said

Rawsel R. Keith, Daniel Baldwin, Oramel H. Smith, Cyrus J. S. Scott, Jacob Kent, Jr., and Isaac N. Hall, together with one Joseph A. Wing, of Plainfield, in the county of Washington, and one Joseph Potts, then of Groton, in the county of Caledonia, were duly appointed commissioners to receive subscriptions for the capital stock of said company, and said commissioners were duly authorized by said act to cause such preliminary explorations and surveys to be made as they might deem expedient. And the plaintiffs aver that afterwards, to wit, on the 4th day of March, A. D. 1850, the said Keith, Baldwin, Smith, Scott, Kent, Hall and Wing duly accepted said trust, to wit, at Montpelier, in the county of Washington. And the plaintiffs further aver. that afterwards, to wit, on the day and year last aforesaid, at Montpelier aforesaid, said commissioners last named deemed it expedient that a preliminary exploration and survey of the route for a railroad, contemplated by said act, from said Montpelier to Wells River, should be made, and then and there employed one Archibald Kennedy, then of Waterbury, in the county of Washington, to make said preliminary exploration and survey of said railroad route. And the plaintiffs further aver, that afterwards, to wit, on the 29th day of September, A. D. 1850, at Montpelier, in the county of Washington, said Kennedy made and completed said preliminary exploration and survey of said railroad route, and that there was then and there due to the said Archibald Kennedy therefor, a large sum of money, to wit, the sum of five hundred and eighty-two dollars and sixteen cents. And the plaintiffs further aver, that afterwards. to wit, on the 29th day of September, A. D. 1850, at Wells River, in the county of Orange, in consideration that the plaintiffs would pay to said Kennedy said sum of five hundred and eighty-two dollars and sixteen cents, they, the defendants, then and there promised the plaintiffs, by a writing hereunto annexed, to pay them, the plaintiffs, their, the defendants', share of said sum, when thereto requested. And the plaintiffs aver, that afterwards, to wit, on the 30th day of September, A. D. 1850, at Montpelier, in the county of Washington, relying upon the said promise and undertaking of the defendants, they did then and there pay to said Kennedy said sum of five hundred and eighty-two dollars and sixteen cents,

and that the share of the defendants to pay of said sum then and there amounted to the sum of two hundred and ninety-one dollars and eight cents, of which the defendants then and there had notice, and then and there became liable to pay to the plaintiffs said last mentioned sum when thereto requested, according to the tenor and effect of their said promise and undertaking in this behalf. Yet the defendants not regarding their said promise and undertaking in this behalf, made as aforesaid, but contriving and fraudulently intending craftily and subtilly to deceive and defraud the plaintiffs in that behalf, have not, nor hath either of them paid said sum of money or any part thereof to the plaintiffs, although so to do the defendants were requested by the plaintiffs afterwards, to wit, on the day and year last aforesaid, at Montpelier aforesaid, but they so to do have hitherto wholly refused and still do refuse."

"MESSRS. KEITH, BALDWIN AND SMITH,

Sirs:—Pay A. Kennedy the balance of his account for surveying the Montpelier and Conn. R. Railroad, and we will settle with you for our share.

WELLS RIVER, Sept 29, 1850.          C. J. S. SCOTT.

(Signed)                    J. KENT, JR.

ISAAC N. HALL."

That this writ was served upon the plaintiffs in error, and returned *non est* as to Kent; that the plaintiffs in error demurred to the aforesaid declaration, and that the county court, at the September Term, 1857, overruled the demurrer, adjudged the declaration sufficient and rendered judgment for the defendants in error for four hundred and thirteen dollars and forty-eight cents damages and costs, which judgment the plaintiffs in error claimed was erroneous, because the declaration aforesaid was not sufficient, and they prayed that the same might be reversed and set aside.

*Peck & Colby*, for the plaintiffs in error.

*O. H. Smith*, for the defendants in error.

POLAND, J. The plaintiffs in error claim that the judgment below was erroneous upon three grounds.

1. That the written promise upon which the action was brought was a several promise by each defendant to pay his individual share of the debt to Kennedy, and not a joint undertaking by the three to pay the aggregate of all their shares.

2. That if the promise can be regarded as joint, it is not supported by any sufficient consideration.

3. That no action will lie upon it, because no balance was struck or sum agreed upon as the share of the defendants.

1. The facts set out in the declaration in relation to the origin of the debt to Kennedy, show a joint liability by the plaintiffs, the defendants, and Mr. Wing, to Kennedy for five hundred and eighty-two dollars and sixteen cents, and in the absence of proof of a different ratio of liability, the legal presumption would be that they were liable equally, so that if one paid the whole each of the others would be liable to contribute his equal proportion to reimburse the one paying.   This implied liability to contribute would be several, and not joint.    But the defendants, by their writing, said to the plaintiffs that if they would pay the whole the defendants would pay their share.

The form of the defendants promise is *joint*, and none of the ordinary words used to make a contract several are inserted. The general rule of law undoubtedly is, that whenever several persons agree to perform a particular act, they are bound *jointly* and not *severally*, in the absence of express words creating a several liability, and any number of persons may bind themselves jointly for the performance of one entire duty, and so become in effect sureties for one another for the performance of the thing contracted to be done.    See Addison on Contracts 966–7 ; Chitty on Con. 98.

Whether a promise or contract made or signed by several persons is joint or several, like every other question on the construction of a contract, depends mainly upon what appears to have been the intention and understanding of the parties, to be gathered from the language of the whole instrument and its subject matter.    Mere words of plurality alone will not render a contract joint when the parties engage for the performance of distinct and several duties, and the whole instrument shows that the intention must have been to make the obligation *several*, and not joint.

Scott et al. *v.* Keith et al.

But where several persons contract together for the performance of a particular act, in order to make their liability several, the intention must be made apparent by express words; Add. on Con. *ub. sup.*

Now in this promise of the defendants to the plaintiffs, there are no proper words of severalty, and the only ground upon which it can be argued that the parties did not intend to be bound jointly, is that the defendants would only be liable severally to make contribution to either one who should pay the whole debt. The amount of the several liability of each was not thereby increased, only they became virtually by a joint promise sureties for each other. But while the debt was unpaid to Kennedy they stood each liable for the whole amount to him, and sureties for each other for the whole, so that they were really lessening the extent of their liability by this new contract. The intent of the defendants to become bound jointly, and for an entire sum, is strengthened some, we think, by the form of the promise, "we will settle our share." If they had said *our shares;*" it would have appeared more like an intention to remain only severally liable. We are of opinion that there is nothing in the language or subject matter of the contract that will authorize us to overcome the presumption arising from the *entire* and *joint* form of obligation used.

2. As this construction of the writing creates a different legal liability from that under which the defendants stood before, it must be supported by a consideration. The defendants below say that as the plaintiffs, before this promise was made, were under a legal obligation to pay their proportions of the debt to Kennedy, and Kennedy might enforce collection of the whole from either one or all of them, therefore, the voluntary payment of the whole by the plaintiffs below, at the request of the defendants, was no consideration whatever. The plaintiffs below were not bound voluntarily to raise the money and pay the whole, as between them and the defendants; they were only bound to raise their proportions, and though Kennedy might collect the whole of the plaintiffs below, or one of them, he might also collect the whole of the defendants, and compel them to resort to their remedies for contribution.

The raising the money by the plaintiffs below and extinguishing the whole debt to Kennedy, was an act which as between the plaintiffs and the defendants the former were not bound to do, and was an act which might prove detrimental to the plaintiffs, and beneficial to the defendants, and therefore a sufficient consideration to support a promise by the defendants below was founded upon its having been done at their request.

3. Was the declaration defective in not alleging that the sum due Kennedy had been divided, and the share of the defendants ascertained?

The declaration avers that their share was a certain sum, two hundred and ninety-one dollars and eight cents. It does not allege that a balance had been struck, and this sum agreed on by the parties, but even if this were necessary to be done in order to make a legal severance, we think it doubtful, at least, whether it would be necessary to allege it in the declaration.

The declaration states as an allegation of fact, that the defendants' share was a certain sum, and this implies that it has been legally ascertained; if it had not, it would rather be an objection to the proof than to the declaration.

But we do not rest the decision upon this ground, as we think this case does not come within the class where it has been decided to be necessary that a balance shall be struck before any action except one for an account can be maintained. The defendants have cited and rely on this point upon *Beach* v. *Hotchkiss*, 2 Conn. 425, and *Casey* v. *Brush*, 2 Caine's 293.

The doctrine of both those cases is substantially this: that an action of assumpsit will not lie between partners for a balance due upon their partnership, unless the account has been previously liquidated and a balance struck. The soundness of these decisions is obvious, for until the partnership accounts have been settled, and the balance ascertained, the matter is in no suitable condition to be tried in any action, except where an account can be taken, therefore the parties must resort to an action of account, or a bill in equity, where the same can be adjusted.

But here are no partnership dealings to be adjusted; all these parties were mere joint debtors to Kennedy, and if one paid the whole, or more than his share, he could immediately bring

assumpsit against the others for contribution.    It does not appear that the parties were under any other liabilities, or had made any other expenditures in this matter to be adjusted between them.    The declaration alleges the debt to Kennedy to be a fixed and  certain  sum,  so  that  nothing  appears that any necessity existed for any adjustment of accounts to ascertain the share of the defendants, beyond a mere division of this single sum.    We are of opinion, therefore, that the case does not fall within the principle of the cases cited by the defendants.

Judgment that there is no error in the record complained of, and the judgment below is affirmed.