In re: Earl G. Holbrook, Petitioner.

Kennebec.      Opinion, February 4, 1935.

*William H. Niehoff*, for petitioner.

Sitting: Pattangall, C. J., Dunn, Sturgis, Barnes, Thaxter, JJ.

Pattangall, C. J.   On exceptions. Petitioner, having been adjudged guilty of contempt by a Justice of the Superior Court, was committed to jail for the term of four months. While so imprisoned, he unsuccessfully sought liberation through habeas corpus proceedings and now comes to this Court for the relief denied him below.

"An application for writ of habeas corpus is addressed to the

sound discretion of the court and the writ will not be granted unless the real and substantial justice of the case demands it." *O'Malia* v. *Wentworth*, 65 Me., 129; *Sweetland, Petitioner*, 124 Me., 58, 126 A., 42. And in *Knowlton* v. *Baker*, 72 Me., 202; *Stuart* v. *Smith*, 101 Me., 397, 64 A., 663, and *Wyeth* v. *Richardson*, 76 Mass., 240, it was decided that exceptions will not lie to the discharge of a prisoner upon habeas corpus.

Whether or not exceptions lie to the refusal to discharge has never been ruled upon, or even discussed, in any opinion of this Court. Our Law Court is a statutory court. Its jurisdiction is limited and defined in Sec. 9, Chap. 91, R. S. 1930, the provisions of which have not been materially changed since 1857. Prior to that time, no specific mention of habeas corpus appeared. As the law then stood, it was in substance similar to the Vermont statute under which it was held that exceptions would lie to refusal to discharge. In re *Jesse Cooper*, 32 Vt., 252. In the 1857 revision, there was added the following clause, "questions arising on writs of habeas corpus, mandamus or certiorari where the facts are agreed or ascertained and reported by a judge." Sec. 17, Chap. 77, R. S. 1857. This provision is identical in substance with that appearing in the Massachusetts statute. We find no reported case in that state in which the court refused to consider a case coming before it on exceptions to the refusal of a discharge.

But in *Bishop, Petitioner*, 172 Mass., 35, 51 N. E., 191, the Court said, "It is doubtful if exceptions will lie in a hearing upon petition for habeas corpus or after the writ has issued in a hearing upon the question of remanding or discharging the party. In recent cases, questions of law arising on habeas corpus have been reserved, reported or adjourned into the full court by a single justice."

And in *Chambers' Case*, 221 Mass., 178, 108 N. E., 1070, "Habeas Corpus is a proceeding at law. No appeal lies from a decision or order of a justice of this court made at common law. *Channel* v. *Judge of District Court*, 213 Mass., 78, 99 N. E., 769, and cases cited. It is doubtful whether exceptions lie to rulings made at a hearing on a petition for a writ of habeas corpus. *Wyeth* v. *Richardson*, 10 Gray, 240; *King's Case*, 161 Mass., 46; *Bishop, Petitioner*, 172 Mass., 35. The usual course has been for the presid-

ing justice to reserve, report or adjourn cases into the full court where its determination ought to be had."

Fish v. Baker, 74 Me., 106, came to the Law Court on exceptions which were not considered because not seasonably filed, and the opinion notes that the case is not "reported by the presiding justice within R. S., Chap. 77, Sec. 13," a method of procedure provided for by the amendment referred to above.

But in O'Malia v. Wentworth, supra; Tuttle v. Long, 100 Me., 123, 60 A., 892; Sweetland, Pet'r., supra; Cote v. Cummings, 126 Me., 330, 138 A., 547; and Rafferty v. Hassett, 130 Me., 241, 154 A., 646; our Court considered and decided cases on exceptions to refusal to discharge, expressing no doubt as to the procedure being correct. In view of this sustained and uniform practice, notwithstanding the amendment to the statute, we may safely assume jurisdiction and regard as established the practice of bringing forward, on exceptions, cases such as that which we have before us.

The mittimus on which petitioner was committed and held read as follows:

"WHEREAS on this 16th day of October, 1934, being the twelfth day of this October Term of said Court, in open Court and in the presence of Herbert T. Powers, the Presiding Justice thereof, and while said court was engaged in hearing and determining a cause then and there pending before it, in which said cause the said Earl G. Holbrook was then and there one of the defendants.

"and WHEREAS the said Earl G. Holbrook offered himself as a witness in said action and gave testimony therein,

"and WHEREAS the said Earl G. Holbrook by clear evidence was shown to be guilty of the crime of perjury committed while giving his testimony as aforesaid,

"Now THEREFORE, it is ORDERED and ADJUDGED by this Court, that the said Earl G. Holbrook, by reason of said act, was and is guilty of contempt of the authority of this Court, committed in its presence on this 16th day of October, 1934.

"And it is further ORDERED that the said Earl G. Holbrook be punished for said contempt by imprisonment in the county jail in said County of Kennebec for the term of four months.

"And it is further ORDERED that a certified copy of this Order, under the seal of this Court, be process and warrant for executing this Order. . . . "

Petitioner claims that his imprisonment was unlawful for these reasons:

"FIRST: The Court was without authority to adjudge the Petitioner in contempt for the reason that he was shown to be guilty of the crime of perjury.

"SECOND: The Court was without authority to adjudge the Petitioner guilty of the crime of perjury.

"THIRD: The constitutional rights of the Petitioner were violated when the Court adjudged him guilty of the crime of perjury.

"FOURTH: The mittimus does not state what particular statements were false or upon what facts the Court adjudged the Petitioner guilty of the crime of perjury.

"FIFTH: The mittimus does not state that the Petitioner had been duly sworn or affirmed or that he gave testimony under oath.

"SIXTH: That Section 3 of Chapter 133 of the Revised Statutes of Maine abrogated any right or authority the Court may have had in punishing for contempt based upon perjury committed in the presence of the Court.

"SEVENTH: The mittimus ordered that a certified copy of the order under the seal of the Court be process and warrant for executing the order while the process upon which the Petitioner is being held in jail is but a true copy of the order attested by the Clerk."

No serious consideration need be given the fourth, fifth and seventh reasons.

The clear issue presented is whether or not a justice presiding at a *nisi prius* trial has authority to commit for contempt a party testifying in his own behalf when "by clear evidence" the witness "was shown to be guilty of perjury" while so testifying. The question is one of first impression in this jurisdiction.

"The power to commit for contempt is incident to all courts

of record." *Morrison* v. *McDonald*, 21 Me., 550. It has been by our statutes especially extended to Boards of Registration, State Assessors, Disclosure Commissioners and Department of Public Welfare.

Contempt has been generally defined as "any act which is calculated to embarrass, hinder or obstruct the court in the administration of justice or to lessen its authority or dignity." *People* v. *Cochrane*, 307 Ill., 126, 138 N. E., 291. "Conduct which tends to bring the authority of the court and the administration of the law into disrespect or to defeat, impair or prejudice the rights of witnesses or parties to pending litigation." *Snow* v. *Hawkes*, 183 N. C., 365, 111 S. E., 621. "To obstruct the administration of justice." *U. S.* v. *Craig*, 266 Fed., 230. "Refusal of a witness to answer any question which he may lawfully be required to answer is contempt." *Rudd* v. *Darling*, 64 Vt., 456, 25 A., 479; *Dixon* v. *People*, 168 Ill., 179, 48 N. E., 108, 110. "An evasive answer constitutes contempt when it is in effect a refusal to answer." *Becker* v. *Gerlich*, 129 N. Y. S., 545.

It has been frequently held both in this country and in England that perjury may, under certain circumstances, be punished as contempt. Some authorities have assumed that it may be so punished in every case.

"Where defendant, without regard for the oath he had taken and without consideration or regard for authority, justice or the dignity of the court, gave testimony which he knew was false, he purposely demeaned himself so as to retard court proceedings and was guilty of direct contempt." *Young* v. *State* (Ind.), 154 N. E., 478.

"Wilfully false evidence in the presence of the court regarding a material fact is obstructive of justice and constitutes a criminal contempt of court." *Murray Transportation Company* v. *Dunnigan et al*, 53 Fed., (2d) 502.

"Preparing, verifying and securing the presentation of a false affidavit intended to influence the action of a court constitutes an obstruction to the administration of justice, punishable as a criminal contempt." In re *Steiner et al*, 195 Fed., Rep. 299.

"Where the perjury of petitioner is clearly demonstrated and

admitted, the court would be remiss in its duty if it failed to punish such perjury as contempt." *Backer* v. *Realty Co.*, (N. J. Eq.), 152 A., 241.

In many jurisdictions the authority of the court has been qualified and an attempt made to distinguish the cases in which perjury may properly be punished as contempt and those in which such action would be inappropriate.

"Courts will not ordinarily, when the facts are in dispute, punish perjury as contempt, not because of lack of power but because sound public policy requires that the offender should be left to the criminal law. But where the facts are admitted or demonstrated, the court would be shirking a clear duty if it did not act, and circumstances may arise which would make it the duty of the court to act even if it were obliged to weigh evidence." *Edwards* v. *Edwards*, (N. J. Eq.), 100 A., 608.

"While perjury may not of itself be punishable as contempt, it is so punishable where attended with other circumstances of obstructive tendencies inherently affecting and impeding the administration of justice." *U. S.* v. *Karns*, 27 Fed., (2d) 453.

"When the answers of a witness amount to the crime of perjury, the offender may be guilty of contempt provided there is also some obstruction of justice in addition to the necessary elements of that crime. . . . Where the court is justified in believing and does believe that a witness has obstructed the administration of justice, the witness may be adjudged in contempt, whether he has sworn falsely or not, but where the court is not justifiably convinced that the performance of its duties has been obstructed, it cannot act under the contempt power even though perjury has been committed." *Weeks* v. *McGovern*, 60 Fed., (2d) 880.

"An obstruction to the performance of judicial duty, resulting from an act done in the presence of the court is the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted, a principle which applied to the subject in hand exacts that in order to punish perjury in the presence of the court as a contempt, there must be added to the essential elements of perjury

under the general law the further element of obstruction to the court in the performance of its duty." *Blankenburg* v. *Commonwealth,* 272 Mass., 25, 172 N. E., 209.

"It is true that there are decided cases which treat perjury, without any other element, as adequate to sustain a punishment for contempt. But the mistake is, we think, evident, since it either overlooks or misconceives the essential characteristic of the obstructive tendency underlying the contempt power, or mistakenly attributes a necessarily inherent obstructive effect to false swearing. If the conception were true, it would follow that when a court entertained the opinion that a witness was testifying untruthfully, the power would result to impose a punishment for contempt, with the object or purpose of exacting from the witness a character of testimony which the court would deem truthful; and thus it would come to pass that a potentiality of oppression and wrong would result, and the freedom of the citizen, when called as a witness in a court, would be gravely imperiled." *Ex Parte Hudgings,* 249 U. S., 378.

In *United States* v. *Appel,* 211 Fed., 495, the Court used the following language: "If the witness' conduct shows beyond any doubt whatever that he is refusing to tell what he knows, he is in contempt of court. That conduct is, of course, beyond question when he flatly refuses to answer, but it may appear in other ways. A court, like any one else who is in earnest, ought not to be put off by transparent sham, and the mere fact that the witness gives some answer cannot be an absolute test. For instance, it could not be enough for a witness to say that he did not remember where he had slept the night before, if he was sane and sober, or that he could not tell whether he had been married more than a week. If a court is to have any power at all to compel an answer, it must surely have power to compel an answer which is not given to evade inquiry. Nevertheless, this power must not be used to punish perjury and the only proper test is whether on its mere face, and without inquiry collaterally, the testimony is not a bona fide effort to answer the questions at all."

In *State* v. *Meese* (Wis.), 229 N. W., 31, the Court stated that "While there are decided cases treating perjury without any other elements as contempt, such holding is mistaken. . . . The rule

which we consider the right one is that to constitute contempt as an act done in presence of the court, there must not only be perjury but the further element of obstruction to the court in the performance of its duty."

"A court has the right to punish as contempt manifest perjury committed in its presence where the court knows judicially and beyond doubt that the testimony is false." *Eykelboom* v. *People*, (Colo.), 206 Pac., 388.

"Merely because the court chose to believe the one side in preference to the other as to an issue of fact upon grounds of greater probability would not justify the court holding the witness who supported the losing side guilty of contempt of court. To justify such action by the court, the falsity of the witness' testimony given in open court must be a matter of judicial knowledge, not merely of opinion. In other words, it must be a patent falsehood upon which there can be no difference of opinion. If the alleged false statement is merely a matter of the court's opinion as distinguished from its knowledge, contempt proceedings will not lie." *Hegelaw* v. *State*, (Ohio App.), 155 N. E., 620.

In *People* v. *Stone*, 181 (Ill. App.), 475, the court, after stating that it was essential to a summary proceeding for direct contempt that the court act upon matters of which it had judicial cognizance, added "In the instant case the Court practically converted itself into a tribunal to try a charge of perjury in utter disregard of the constitutional guarantees afforded one charged with that crime."

Other courts have taken the view that in no event may perjury be regarded as contempt and so punished. In *State* v. *Lazarus*, 37 La., 314, the Court said, "Courts have inherent power to punish for contempt and our code of practice has expressly conferred it, but a judge cannot assume or decide that a witness has sworn untruthfully and punish him for the perjury as a contempt.

"Refusing to answer a question that a witness is bound to answer is contumacy and is punishable as a contempt. Answering such question untruthfully is perjury, the punishment of which is remitted to the regular action of the criminal law through the established forms of criminal proceedings, i. e., by indictment or information followed by a trial.

"An act may be at once a contempt of court and a violation of the criminal law, for example, an assault and battery committed in open court would be punishable as a contempt and also by prosecution. The overt physical, visible act distinguishes it from perjury.

"The law gives to every judge the power to punish for contempt. It is necessary for the orderly police of the court, but to decide that the testimony of a witness is false and to inflict summary punishment upon him without trial is repugnant to the orderly administration of justice and subversive of our idea of right."

A like view is expressed in *Lerch's Contested Election*, 21 Penna., District 1112, in which the Court said: "The proposition that a witness can be punished for contempt because the party calling him believes that the witness was guilty of perjury, and is able to prove other related facts which might lead to a fair conclusion that perjury had been committed, is a novel one. It is in effect, that if the judge believes that a witness is guilty of perjury, he can, if the perjury is committed in open court, fine and imprison him. . . . Perjury is a substantive criminal offence, and has always been triable by indictment by the grand jury and by a petit jury. Any proposition that involves a denial of trial by jury, a sacred constitutional right, should have most serious consideration. . . .

"Witnesses are expected to tell 'the truth, the whole truth, and nothing but the truth.' When they fail to fulfill this obligation, they can be indicted for perjury, and if twelve of their peers decide that they have sworn falsely, they are sentenced by the court. This is the well established and well understood course of procedure.

"In both civil and criminal cases, it frequently happens that one witness will be contradicted at all points by half a dozen witnesses, and yet a jury must decide which side is telling the truth. In civil cases, a plaintiff may be contradicted in most material points by one or more or his own witnesses, and yet the court can not non-suit him. A jury must decide who is telling the truth. . . ."

Innumerable citations might be added, but these suffice to illustrate the various positions taken by the courts concerning the

question under discussion. They may be divided into four groups, the first holding that perjury always constitutes contempt and may be punished as such; the second, that certain other definite factors must accompany perjury in order to make it a basis for contempt charges; the third, that it is only when the presiding justice has judicial notice of the falsity of the testimony that he may regard it as contempt and inflict summary punishment; and the fourth, that a single justice is entirely without authority to make a finding that perjury has been committed in any case under any circumstances and, on the basis of such a finding, punish for contempt.

The view taken by the first group is not generally accepted. Opinions sustaining that of the third are not impressive and appear to confuse judicial knowledge with personal knowledge on the part of the presiding justice. That of the second is unquestionably the majority view; but we believe that the result reached by the fourth group better accords with sound reasoning, good public policy and the orderly administration of law.

We agree that refusal on the part of a witness to answer legitimate questions or to indulge in evasion equivalent to such refusal constitutes contempt and may be punished as such. It is within the power of the witness to promptly purge himself of such contempt. We also recognize that one who disturbs the peace of the courtroom may be guilty of conduct for which he might be held criminally and also be guilty of contempt and be punished therefor. We do not, however, consider that these suggestions affect the situation presented by the instant case.

It is argued that the punishment awarded here is not for committing the crime but for obstructing justice in that particular manner. But no ingenuity of reasoning can disguise the fact that the proceeding rests upon a finding that the party punished has committed perjury.

As has been stated, authority to punish for contempt rests inherently in every court of record and by statute has been conferred upon other agencies of government. To further extend that authority to a point where its exercise includes the right to brand as an infamous criminal a witness who fails to impress a presiding justice, commissioner, or administrative board with the truth of

his testimony is carrying the exercise of judicial power beyond the bounds of safety and wisdom.

Perjury is an abhorrent crime. We are acutely aware that it is too often committed and too seldom punished. It constitutes a constant, ever-present menace to justice and threatens the safety and security of the person and property of citizens compelled to defend or assert their rights in legal proceedings. But no man should be adjudged guilty of perjury arbitrarily or by any means other than the regular method provided for the determination of that offence.

The Constitution of Maine, Section 6, Article 1, guarantees to every citizen accused of crime "a speedy, public and impartial trial by a jury of the vicinity"; and by Section 7 of the same Article provides that "no person shall be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury," reiterating like provisions in the Federal Constitution.

Those safeguards of personal liberty are neither to be disregarded nor evaded. They are not designed as a shield to crime but as a protection to innocence. The experience of generations has demonstrated their necessity and value. They are an integral part of the law of the land and must be respected. In our anxiety to sustain the dignity of courts, we should not ignore the restraints of law. Our Legislature has indicated a method by which the desired purpose may be accomplished without infringing upon constitutional rights.

Sec. 3, Chap. 133, R. S. 1930, provides that "when a witness or a party legally sworn and examined or making affidavit in a court of record testifies in such a manner as to raise a reasonable presumption that he is guilty of perjury, the Court may immediately order him committed to prison or take his recognizance with sureties for his appearance to answer to a charge of perjury and may bind over any witnesses present to appear at the proper court to prove such charge, order the detention so long as necessary of any papers or documents produced and deemed necessary in the presentation of such charge, and cause notice of such proceedings to be given to the State's attorney for the same county."

This statute outlines a course of procedure which the Legislature apparently regarded, and which we regard, as sufficient protection against the evil results likely to flow from unrebuked perjury, while still reserving to the suspected perjurer the legal protection to which he is entitled. Its wise provisions might, with good effect, be more frequently invoked.

To go farther and determine the fact of perjury without indictment or trial by jury and impose the penalty or imprisonment, theoretically for contempt but in reality for perjury, is, we believe, nothwithstanding the contrary judgment of many courts of high standing, an unsafe and unwarranted practice. One suffering confinement under such a sentence is illegally restrained of his liberty.

*Exceptions sustained.*
*Writ of habeas corpus*
*to issue.*