**In re John J. BERNARD.**

Supreme Judicial Court of Maine.

Dec. 13, 1979.

Thomas E. Delahanty, II, Dist. Atty., Herbert Bunker, Jr., Deputy Dist. Atty., Michael D. Seitzinger (orally), Asst. Atty. Gen., Cheryl Simcock, Law Student, Augusta, for plaintiff.

Thomas S. Carey, Fred E. Hanscom Law Offices, Rumford, Albert J. Beliveau, Jr., Rumford (orally), for defendant.

NICHOLS, Justice.

When a trial judge sees a breach of decorum as contempt of court requiring summary treatment at his hands, not infrequently the atmosphere is highly charged and the time for reflection and review is very limited. While the trial judge has both the power and the duty to so control the proceedings before him that an orderly trial, as well as a fair trial, will be achieved, significant issues of due process will often arise as he summarily disposes of the contempt matter.

Such a case is this.

In 1977 in Superior Court in Oxford County John J. Bernard, Chief of Police in Mexico, Maine, was adjudged guilty of criminal contempt following a brief trial before the presiding justice who, just a few hours before, had observed the improper conduct of the police officer. Chief Bernard has appealed from that judgment.

In no way do we condone the deportment of Chief Bernard in the presence of the court that day. We do, however, sustain his appeal because of error in the procedure by which he was there found guilty of criminal contempt.

The pertinent facts are summarized in the presiding justice's statement, which he termed his "certification for the record."

Chief Bernard and Officer Gallant, of the Mexico Police Department, had appeared in court that day to testify in the jury-waived trial of one Pomerleau, charged with (a) hindering apprehension of another person for the commission of a crime and (b) assault upon Officer Gallant. After both parties had rested, and before he announced his findings, the presiding justice declared he was "concerned and disturbed" by the apparent use of unreasonable force by the police in arresting Pomerleau on these two charges. At that point, and while the presiding justice was still speaking, Chief Bernard arose from his chair and "stomped out," closing the courtroom door behind him with some force. As the Chief was making his exit, the presiding justice said, "You don't have to leave now, Mr. Bernard."

The presiding justice proceeded to find Pomerleau guilty of the charge of assault and not guilty of the charge of hindering apprehension, and continued his remarks

upon what he viewed as the overreaction of the Mexico police. Thereupon, Officer Gallant rose from his chair and also strode out, "leaving no doubt but that he would have slammed the door if we had been dealing with a door that slammed." Nothing was said to Officer Gallant. At this point the presiding justice reversed his earlier finding on the assault charge and found Pomerleau not guilty. With the trial thus concluded, the presiding justice left the courtroom and retired to his chambers.

Ten minutes later Chief Bernard, through the deputy district attorney, requested permission to speak with the presiding justice in chambers. Anticipating that an apology would be forthcoming, the presiding justice gave permission, and he asked all in his chambers except the deputy district attorney to leave. There was no official reporter present in chambers.

Chief Bernard stood in the doorway. The presiding justice indicated that, due to his "shock and surprise" at what next transpired, he was unable to recall the precise words used as the Chief strode in, but the Chief's manner was described as "belligerent and contemptuous." His remarks during "no more than two minutes in which the Chief did all the talking," were characterized as an accusation that the presiding justice was prejudiced and would not support the police. He made a reference to someone higher up, but the presiding justice was not sure in what context. The Chief said he hoped that criminals had "as much disrespect for the court as they had for the police."

The presiding justice interrupted Chief Bernard and told him to get out. Even then, the presiding justice stated, rather than leaving the chambers quietly, the

Chief "continued to berate and accuse and show his contempt for the court as he was walking for the doorway, and stood in the doorway between the hall leading to the chambers and continued to indicate his contempt for this court by the words and language that he used."

After Chief Bernard had departed, the presiding justice went to lunch and reflected upon his course of action. Upon returning to the courthouse, he undertook the contempt proceedings which are the subject of this appeal. The record does not disclose what notice Chief Bernard was given, but obviously it was enough for him to appear with counsel. The Chief testified in his own behalf, asserting that when he went to see the presiding justice it was his goal "to open lines of communication between the judiciary and law enforcement personnel" and to achieve a better understanding of the disposition of court matters.

The presiding justice was unmoved by the protestation of Chief Bernard's counsel that he did not know on what "format" the justice was going to present this case until the hearing was underway; he declined to hear counsel's argument upon the proper application of Rule 42, M.R.Crim.P., to this proceeding; and he denied counsel's motion for a continuance.[1]

The presiding justice found Chief Bernard guilty of contempt of court. From the judgment of conviction he seasonably appealed to this Court.

We sustain the appeal.

■ In the case before us, as in most where a trial judge is confronted with a breach of decorum, he had to decide almost immediately whether the misconduct he observed amounted to contempt of court.[2]

---

1. After the contempt trial had concluded, the justice recalled, and caused to be inserted in the record, a remark by Chief Bernard that the justice had not remembered when during the trial he made his statement for the record. The Chief said to him in chambers, he later recalled, "You're no different or better than me. You put your pants on the same way I do, one leg at a time."

2. Because of the disposition of this appeal, we do not reach the issue of whether the last quoted remark is properly before us.

2. Contempt of court may be defined as an act which is calculated to embarrass, hinder or obstruct a court in the administration of justice, or which is calculated to lessen its authority or dignity. *In Re Holbrook*, 133 Me. 276, 280, 177 A. 418, 420 (1935). *See Town of Nottingham v. Cedar Waters, Inc.*, 118 N.H.

Whenever a trial judge does view the misconduct as contumacious, as did the trial judge in this case, he must decide almost as quickly the type of proceedings to be initiated. At such a moment his opportunity for researching the law of contempt is minimal.[3]

In analyzing the issue which controls this appeal we start with the standard, which more than forty years ago we termed "the great, underlying principle," that no judge should preside in a case in which he is not wholly free, disinterested, impartial and independent. *Norton v. Inhabitants of Fayette,* 134 Me. 468, 470, 188 A. 281, 282 (1936).

That standard comports with the rights to which a defendant in a criminal proceeding is entitled under the due process clauses of the state and federal constitutions.[4]

In the law of contempt of court, however, even a right so fundamental as the right to an impartial tribunal must occasionally yield to the need to punish summarily a person who in the presence of the trial judge willfully obstructs the course of criminal proceedings.[5] It yields because the misbehavior not only brings the court into disrepute but also interferes with the orderly conduct of the court's business. *Charles Cushman Co. v. Mackesy,* 135 Me. 490, 494, 200 A. 505, 508 (1938).

Only in such exigent circumstances is summary vindication of the court's dignity and authority necessary. *Cooke v. United States,* 267 U.S. 517, 534, 45 S.Ct. 390, 69 L.Ed. 767 (1925).

In a summary contempt proceeding it is true that we have the anomalous situation of the function of judge, jury and prosecutor combined in a single individual. Nevertheless, that power cannot be denied the trial judge in an appropriate case without inviting or causing such obstruction to the orderly and impartial administration of justice as would endanger the rights and safety of the entire community. *Ex Parte Terry,* 128 U.S. 289, 309, 9 S.Ct. 77, 32 L.Ed. 405 (1888).

Because of its penal nature as well as because of its summary character, a proceeding of this type is to be strictly guarded by the courts. Even if the judge regards the misconduct as contumacious, unless the misconduct actually obstructed the administration of justice in his court, he must accord the contemnor a plenary proceeding instead of punishing him summarily.[6]

The mere fact that the trial judge personally observed the conduct which he regards as contumacious should not of itself be a justification for summary punishment.

We adhere to the standard reaffirmed by the United States Supreme Court in *United States v. Wilson,* 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975), that only "the least possible power adequate to the end proposed" should be employed in contempt proceedings. This standard requires notice and hearing absent an overriding need for immediate punishment to prevent the contumacious conduct from disrupting the orderly progress of the trial. *Harris v. United States,* 382 U.S. 162, 165, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965).

---

282, 385 A.2d 851 (1978). It is not limited to an act in the courtroom itself.

3. From the record it is apparent to us that in this proceeding the presiding justice thought that he was observing the requirements of M.R. Crim.P. 42(a) and that he was following as well the requirements laid down in *Alexander v. Sharpe,* Me., 245 A.2d 279 (1968).

4. Me. Const., Art. I, Sec. 6-A, U.S.Const., Amends. V and XIV.

5. *A. B. A. Standards Relating to the Function of the Trial Judge* (Approved Draft, 1972), Sec. 7.1.

6. *See generally* Douglas, "Civil and Criminal Contempt in New Hampshire," 17 *N. H. Bar Journal* 13 (1975); Neville, "Direct Criminal Contempt: An Analysis of Due Process and Jury Trial Rights," 11 *New England L.Rev.* 77 (1975); Kuhns, "The Summary Contempt Power: A Critique and a New Perspective," 88 *Yale L.J.* 39 (1978); and Billings, "Contempt, Order in the Courtroom, Mistrials," 14 *Wake Forest L.Rev.* 909 (1978).

Our M.R.Crim.P. 42(a) is almost identical to the federal rule of like number. Our M.R. Crim.P. 42(b) is very similar to the federal rule of like number.

■ A careful reading of the record before us on this appeal discloses no obstruction of court proceedings on the part of Chief Bernard. Certainly the jury-waived trial of Pomerleau moved speedily to a conclusion. However offensive Chief Bernard's remarks to the presiding justice in chambers may have been, we do not find that he thereby obstructed the course of the proceedings.

Absent any willful obstruction of judicial proceedings, we conclude that it was error to proceed summarily under M.R.Crim.P. 42(a) to punish the Defendant for contempt. Rather, the presiding justice's charge against him should have been prosecuted in a more deliberate manner in a proceeding governed by M.R.Crim.P. 42(b).

In sum, the Defendant was denied due process of law.

The entry, therefore, is:

Appeal sustained.

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

DELAHANTY, J., did not sit.

ARCHIBALD, Justice, with whom GODFREY, Justice, joins, concurring.

I concur in the result announced in Mr. Justice Nichols' opinion.

As I view this case, Bernard's summary conviction of criminal contempt under Rule 42(a), M.R.Crim.P.,[1] cannot be upheld, but only because of deficiencies in the certificate required by the rule. I feel it is inappropriate and unnecessary on the facts in the record before us to base the opinion on any violation of due process.

Why do I feel the certificate is deficient?

The presiding justice did describe the conduct of Bernard while in the courtroom. However, the balance of the factual summary dictated into the record makes it quite apparent to me that if nothing else had occurred beyond the courtroom episode, the contempt proceeding would not have ensued. Therefore, the interchange in chambers between Bernard and the justice necessarily constitutes the conduct which must underlie the charge of criminal contempt.

The factual certification of the justice is devoid of any specific description of what Bernard either did or said while confronting the justice in chambers. We only know that in the subjective opinion of the justice, Bernard's manner then was "belligerent and contemptuous."[2] The justice's description of his condition as one of "shock and surprise" cannot be said to be descriptive of Bernard's conduct since it only reflects the state of mind of the justice. What Bernard specifically may have said or done to cause "shock and surprise" is not to be found anywhere in the statement. I also note that the statement does not suggest that there was any serious disruption of any particular judicial proceeding resulting from the confrontation in chambers between Bernard and the justice.

I read Rule 42(a) as mandating a factual description of what a particular justice "saw or heard." Mere conclusory statements cannot comply with the language of the rule which requires the order of contempt to "recite the facts."

In summary, I would sustain the appeal, limiting the rationale for that result to an insufficient certificate.

---

1. (a) Summary Disposition. A criminal contempt may be punished summarily if the justice certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the justice and entered of record.

2. In a 42(b), M.R.Crim.P., plenary proceeding the Deputy District Attorney who witnessed the chambers confrontation could have been an available witness.