**STATE of Maine**

v.

**Dennis Eugene FRIEL.**

Supreme Judicial Court of Maine.

Argued April 30, 1985.

Decided Aug. 6, 1985.

---

James E. Tierney, Atty. Gen., Eric E. Wright (orally), Charles K. Leadbetter, Thomas L. Goodwin, Asst. Attys. Gen., Augusta, for plaintiff.

R. James Davidson (orally), Waldodobo, for defendant.

Before McKUSICK, C.J.,* and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

VIOLETTE, Justice.

The defendant appeals from a judgment of criminal contempt entered against him after a summary proceeding in the Superior Court, Knox County. He challenges the basis for the finding of contempt, and argues that the summary procedure before the presiding justice was improper. We deny the appeal.

## I.

An Androscoggin County grand jury indicted the defendant, Dennis Eugene Friel, and Donald Lagasse for committing aggravated criminal mischief by damaging the property of various churches. The case was transferred to the Superior Court, Knox County, and a jury trial of both parties began on September 10, 1984. On the third day of the trial, September 12, the presiding justice found Friel in contempt of court, sentenced him to three days in the county jail, and had him removed from the courtroom. On September 13, the presiding justice issued an order pursuant to M.R.Crim.P. 42(a) reciting, *inter alia*, the following facts.

On September 7, Friel was present at a pre-trial hearing. Friel repeatedly placed his fingers in his ears when the justice spoke to him, referred to the justice as a "crooked judge," and placed his false teeth on the end of his tongue and stuck both teeth and tongue out at the bench.

On September 10, before the commencement of jury selection, the justice warned Friel that he would not permit his disrespectful behavior to interfere with the trial. Friel responded with laughter. Once again, Friel placed his fingers in his ears when the court addressed him. When the court denied one of Friel's motions, Friel made a loud grumbling sound. A short while later, he repeated this sound. In the middle of the proceedings, Friel abruptly rose and handed a note to a newspaper reporter. At the end of the day, at the request of Friel's attorney, Friel was permitted to address the court. Friel began speaking in a loud and agitated manner. When the justice was speaking, Friel loudly responded with "I will leave, I do not like your pukey face," "keep it to yourself," and "(inaudible) catholic." Friel then left the courtroom, only to return a short time later to wander from the back of the courtroom to the defendants' table.

On September 11, Friel was forty minutes late for the start of trial. During trial, Friel placed a Bible on the railing next to him, in the immediate view of the jury, and pointed to it. When the justice directed Friel to remove the Bible, both he and his counsel objected loudly that it was only the Bible. During cross-examination of a witness by Friel's attorney, the witness stated, "What you're saying [is] that I lied about these people." At this point, Friel interrupted the cross-examination and said, "Yes."

On September 12, Friel repeatedly made facial grimaces, snorts of disgust, and loud sighs during the court proceedings. During a bench conference, Friel stood up, announced that he "had to piss" and walked out of the back of the courtroom. Upon his return, Friel walked up to the

---

* McKusick, C.J., sat at oral argument and participated in the initial conference, but participated

no further.

bench conference, stopped, and glared at the justice. The justice informed Friel's attorney that he would not permit Friel to walk in and out of the courtroom whenever he pleased. Friel's attorney then returned to the defendants' table and conferred with his client. Then, directing his actions toward the bench, Friel lifted his hand with his middle finger pointing upwards and stated, smirkingly, "Next time I will ask to go number one." It was at this point that the court found Friel in contempt, sentenced him, and had him removed from the courtroom.

## II.

■ In our recent decision of *State v. Campbell,* we discussed what type of conduct can justify a summary finding of criminal contempt under M.R.Crim.P. 42(a).[1] 497 A.2d 467, 471–473 (Me.1985). We have no doubt that summary contempt proceedings were justified in this case based upon Friel's courtroom behavior.[2] *See id.* The presiding justice certified that he personally observed Friel's actions and statements, in the actual presence of the court, on September 12 when Friel left the courtroom, apparently to use the bathroom, and upon his return. That conduct amounted to an actual and willful obstruction of the administration of justice committed in the actual presence of the court. *See id.* at 472. Through his actions and words, in open court and before the jury, Friel intentionally demeaned the court, "and threatened the objectivity and celerity of the proceedings." *Id.* This behavior, in the context of the pattern of disrespectful and disruptive courtroom conduct that Friel had established throughout the litigation, "created 'an overriding need for immediate

punishment to prevent the contumacious conduct from disrupting the orderly progress of the trial.'" *Id.* (quoting *In re Bernard,* 408 A.2d 1279, 1282 (Me.1979)). Friel's conduct therefore provided sufficient grounds for the summary contempt finding.

## III.

Anticipating that we might find that his behavior justified the summary finding of criminal contempt, Friel next argues that the summary contempt proceeding was nevertheless improper because he and the presiding justice "bec[a]me embroiled in a running controversy." *State v. Campbell,* 497 A.2d 467, 473 (Me.1985) (quoting *Taylor v. Hayes,* 418 U.S. 488, 501–03, 94 S.Ct. 2697, 2704–05, 41 L.Ed.2d 897 (1974)). According to Friel, due process requires a plenary hearing on the contempt charge before a different, impartial justice pursuant to M.R.Crim.P. 42(b) because of the likelihood that the presiding justice was biased against him.

■ Based upon the authorities we discussed in *Campbell,* at 473–474, we conclude that the involvement between Friel and the presiding justice does not require referral of the contempt charge to another justice. As we stated in *Campbell:*

> After a careful examination of the record, we conclude that the presiding justice displayed exemplary patience and restraint in dealing with [Friel's] conduct. We are convinced that the presiding justice used the summary contempt mechanism only as a last resort to restore order and dignity in the courtroom. The presiding justice did not quarrel with

---

1. Rule 42(a) provides:

 (a) **Summary Disposition.** A criminal contempt may be punished summarily if the justice certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the justice and entered of record.

2. We do not consider the question of whether it was proper for the presiding justice to exclude Friel from his own criminal trial. *See generally Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Friel does not challenge the exclusion itself on appeal. We address only whether the summary finding of contempt preceding the exclusion of Friel from the courtroom was proper.

[Friel] or otherwise depart from an appropriate judicial demeanor....

*Id.* at 474. We acknowledge that this case, more so than *Campbell,* involves personal attacks upon the justice by the contemnor. These attacks, however, do not approach the vituperativeness displayed in *Mayberry v. Pennsylvania,* where the United States Supreme Court determined that the trial judge was so "vilified" by the contemnor that he "necessarily [became] embroiled in a running, bitter controversy" with him. 400 U.S. 455, 465, 91 S.Ct. 499, 504, 27 L.Ed.2d 532 (1971).[3] There was no embroilment between Friel

**3.** Furthermore, in *Mayberry,* the trial judge delayed the summary contempt proceeding until after trial. The Supreme Court stated that, although it was improper for the trial judge to act upon the contempt charge *after* trial, he could, "with propriety," have disposed of it himself *during* trial. 400 U.S. at 463, 91 S.Ct. at 504. Regarding instant treatment of contempt, the Supreme Court remarked:

and the presiding justice that would require a plenary proceeding on the contempt charge before another justice.

The entry is:

Judgment affirmed.

All concurring.

Moreover, we do not say that the more vicious the attack on the judge the less qualified he is to act. A judge cannot be driven out of a case.

*Id.* In the case at bar, the presiding justice acted upon the contempt during trial.