STATE of Maine

v.

**Andrews B. CAMPBELL.**

Supreme Judicial Court of Maine.

Argued March 14, 1985.

Decided Aug. 6, 1985.

See also Me., 497 A.2d 475.

James E. Tierney, Atty. Gen., Eric E. Wright (orally), Thomas L. Goodwin, Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for plaintiff.

Berman, Simmons & Goldberg, P.A., Jack H. Simmons (orally), Steven D. Silin, Julian Sweet, Lewiston, Campbell Law Offices, Jura A. Burdinik, Portland, for defendant.

Before McKUSICK, C.J.,[*] and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

VIOLETTE, Justice.

The defendant appeals from a judgment of criminal contempt entered against him after a summary proceeding in the Superior Court, Knox County. He contends that his conduct did not justify the finding of contempt, that the summary proceeding before the trial judge was improper, and that the court imposed an excessive sentence for the contempt. We disagree with the defendant's contentions and deny the appeal.

## I.

On April 13, 1984, the Superior Court, Androscoggin County, appointed the defendant, attorney Andrews Campbell, to represent Dennis Friel in a criminal prosecution. A grand jury had indicted Friel and a co-defendant, Donald Lagasse, for committing aggravated criminal mischief by damaging the property of various churches.

On September 7, 1984, the case was transferred to Knox County. The jury trial of Friel and Lagasse began on September 10. Both before and during trial, Campbell and his client Friel repeatedly questioned the fairness of the proceedings and specifically challenged the impartiality of the Superior Court justice. On several occasions, the presiding justice warned Friel and his attorney concerning Friel's courtroom behavior.

The courtroom behavior of attorney Campbell was also of concern to the presiding justice. On the second day of the trial, September 11, Campbell shook hands with a witness for the State as the witness was leaving the stand. The court instructed the jury not to draw any inference from this gesture by defense counsel.

On the third day of the trial, September 12, after the presiding justice found Dennis Friel to be in contempt of court and had him removed from the courtroom, attorney Campbell questioned the basis of the court's action. When Campbell continued to protest, the presiding justice warned him that he would find him in contempt as well if he did not cease his objections. At this point, the court announced that it would recess briefly.

After the recess, but before the jury returned to the courtroom, there was a discussion between the presiding justice and counsel concerning the contempt finding made against Friel. Campbell again protested the court's decision to find his client in contempt, and referred to the incident as a "judicial trap." Despite being interrupted by Campbell on more than one occasion, the court informed him that his client was barred from the courtroom and that the trial would continue. In a vigorous and lengthy continuation of his objection, Campbell made the following statements: he referred to the contempt finding directed at his client as "the most grave violation of the United States Constitution [he had] ever seen"; he urged the presiding justice to disqualify himself from hearing the underlying criminal matter and to

---

[*] McKusick, C.J., sat at oral argument and participated in the initial conference, but participated no further.

grant a mistrial; he indicated that he could not proceed "in good faith, ... as a member of the Bar and as a lawyer," and observed that "it cause[d] [him] great grief to have to stay at a proceeding where the rulings have been as such as [the] Court has done"; he stated that, by choice, he would be in "the Maine Supreme Court or the First District Court of Appeals of the United States District Court [sic]"; and he indicated that he would remain mute throughout the remainder of the trial. The presiding justice observed that he was extremely concerned about Campbell's performance in representing his client, particularly his behavior concerning the contempt finding made against Friel. After the court indicated that the jury should be brought in so that the trial could be resumed, Campbell informed the court of his intent to leave the courtroom to speak with his client and to remain mute throughout the rest of the trial. The presiding justice told Campbell that he would pursue such conduct "at his peril."

The jury was then brought into the courtroom. Campbell almost immediately requested a conference at sidebar to make an additional point regarding the contempt finding made against Friel and to request that "a transcript of all proceedings to date in this trial ... be prepared on an expedited basis immediately." After the court deferred action upon this request, Campbell left the courtroom and the trial resumed.

A short time later, during the State's examination of a witness, Campbell returned to the courtroom and immediately interrupted the proceedings to request permission from the court to leave again to consult with his client. The court refused to authorize such action and told Campbell to be seated. The presiding justice reminded Campbell that he had a duty to represent his client effectively in the matter before the court. Campbell remarked, "I don't think I need authorization, do I?" and left the courtroom again. Three minutes later Campbell returned to the courtroom.

After listening to some testimony, he again interrupted the trial by stating, "Excuse me, Your Honor. I just want to talk to my client." Campbell then left the courtroom without comment from the presiding justice. He returned to the courtroom two minutes later.

A short time later, the presiding justice asked Campbell if he intended to cross-examine a witness. Campbell responded, "Your Honor, I have already stated to the Court that my client and I—," at which point the court cut him off and excused the jury. The following exchange between the presiding justice and Campbell, culminating in the justice summarily finding Campbell to be in contempt of court, then took place:

THE COURT: Before you begin, let me caution you, counsel. You are an attorney at law licensed to practice in the state of Maine.

MR. CAMPBELL: I hope so.

THE COURT: Let me finish, because it is very, very important that the record reflect what I am saying. As an officer of the court and an attorney at law, you are obligated to represent your interest or your client's interest with respect to any given case in a manner that is required of you as a lawyer.

MR. CAMPBELL: I don't think anybody has ever done more than I have as a lawyer for this client.

THE COURT: Let me finish. That would include being in this courtroom whenever he's on trial to represent his interests and protect him.

MR. CAMPBELL: Your honor—

THE COURT: Let me finish, Mr. Campbell. And protect his interests fully by virtue of listening to the evidence that is offered against him during the course of the trial, and, if necessary, to cross-examine any witness to make sure your client is duly protected and his interest is fully protected.

MR. CAMPBELL: May I respond?

THE COURT: You will have an opportunity to respond in due course. Let me finish.

MR. CAMPBELL: Of course.

THE COURT: That is when you say your client has ordered you to stand mute that, sir, does not permit you to stand mute.

MR. CAMPBELL: Your Honor, I made that decision myself.

THE COURT: Let me finish. If you make a conscious choice you are, in effect, jeopardizing your profession and your professional status.

MR. CAMPBELL: If this was a trial I think the Court, as I have said, has jeopardized his status under the Constitution. He's been denied the fundamental right to a fair trial. He's been booby trapped. All the evidence indicates—I don't know if he has been booby trapped, I have argued four times and he's been denied the right to a fair trial.

THE COURT: Mr. Campbell—

MR. CAMPBELL: Let me finish. The right to a fair trial, his interests are not to be subjected to what he has called an inquisition. In my opinion the facts in court, in open court, are such to give reasonable credence to what he has said. His decision, I will tell you mine, too, sir, is that his interests demand my being in the federal court. If I have to stay here I cannot get that man out of jail before he's put at Thomaston by this Court, and myself, possibly, sir, sentenced without any fair ground.

THE COURT: This Court does hereby find that you have committed contempt in the actual presence of this Court. I do hereby hold you in contempt. I sentence you to five days to the County Jail—

MR. CAMPBELL: Sir, that makes, that means my client can't get out.

THE COURT: That sentence will be stayed until such time as this trial is concluded or you, of your own choosing, are not here, whichever first occurs.

MR. CAMPBELL: I understand. Thank you.

THE COURT: I am going to take a five-minute recess.

MR. CAMPBELL: You may.

On September 13, the presiding justice filed an order of contempt pursuant to M.R.Crim.P. 42(a) reciting the facts underlying his finding of September 12 that Campbell was in contempt of court. Campbell appeals from the judgment of contempt entered against him.

## II.

"A contempt of court has been defined as 'any act which is calculated to embarrass, hinder or obstruct the court in the administration of justice or to lessen its authority or dignity.'" *State v. DeLong,* 456 A.2d 877, 881 (Me.1983) (quoting *In re Holbrook,* 133 Me. 276, 280, 177 A. 418, 420 (1935)); *In re Bernard,* 408 A.2d 1279, 1281 n. 2 (Me.1979). Under M.R.Crim.P. 42, contempt may be punished criminally in two different ways: summarily pursuant to Rule 42(a),[1] and after a plenary procedure pursuant to Rule 42(b).[2] Although the

1. Rule 42(a) provides:

 **(a) Summary Disposition.** A criminal contempt may be punished summarily if the justice certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the justice and entered of record.

2. Rule 42(b) provides:

 **(b) Disposition Upon Notice and Hearing.** A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the justice in open court in the presence of the person charged or, on application of an attorney for the state or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The person charged is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a justice, that justice is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

**472**

right of a court to punish contempt summarily is firmly established, *see In re Bernard*, 408 A.2d at 1282; *United States v. Wilson*, 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975),[3] the exercise of this power is subject to definite limitations. By its own terms, Rule 42(a) restricts summary punishment of criminal contempt to situations where the presiding justice is able to certify that "he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." Further, because of the departure from the usual standards of due process inherent in a summary proceeding, a court may resort to summary punishment of contempt only where there is an actual and willful obstruction of the administration of justice. *DeLong*, 456 A.2d at 881–82; *In re Bernard*, 408 A.2d at 1282–83.

 Where the alleged contemnor is an attorney representing a client before the court, due regard must be given to his right to act as a zealous advocate on his client's behalf. *In re McConnell*, 370 U.S. 230, 236, 82 S.Ct. 1288, 1292, 8 L.Ed.2d 434 (1962); *In re Dellinger*, 461 F.2d 389, 397–401 (7th Cir.1972). *See generally* Note, *Attorneys and the Summary Contempt Sanction*, 25 Me.L.Rev. 89, 90–98 (1973). "Attorneys must be given great latitude in the area of vigorous advocacy." *In re Dellinger*, 461 F.2d at 398. Nevertheless, the exercise of the summary contempt power vested in the courts will be justified whenever it can "clearly be shown" that an attorney's conduct constitutes an "actual obstruction of justice." *In re McConnell*, 370 U.S. at 236, 82 S.Ct. at 1292; *see, e.g., In re Steinberger*, 387 A.2d 1121, 1124 (Me.1978); *Alexander v. Sharpe*, 245 A.2d 279, 283–84 (Me.1968); *Commonwealth of Pennsylvania v. Local Union 542, International Union of Operating Engineers*, 552 F.2d 498, 509 (3d Cir.1977).

 In support of the finding of contempt, the presiding justice certified that he personally observed, *inter alia*, the actions and statements of attorney Campbell, in the actual presence of the court, on the several occasions when Campbell left the courtroom to speak with his client and then returned, thereby repeatedly interrupting the trial, despite the court's express refusal to authorize Campbell to leave the proceedings to consult with his client. That conduct constituted an actual and willful obstruction of the administration of justice. *See DeLong*, 456 A.2d at 881–82. Campbell intentionally flouted the authority of the presiding justice to control the trial and its participants, and threatened the objectivity and celerity of the proceedings. Campbell's behavior created "an overriding need for immediate punishment to prevent the contumacious conduct from disrupting the orderly progress of the trial." *In re Bernard*, 408 A.2d at 1282.

Campbell, however, contends that his conduct during the trial was merely a vigorous defense, necessary to protect his client's interests. Campbell also argues that, even if his conduct was objectively obstructive, it did not justify the summary finding of contempt because it was undertaken in good faith. Campbell concludes that, in light of the sixth amendment concerns involved in the representation of a criminal defendant, his conduct constituted permissible advocacy on behalf of his client, and provided an insufficient basis for the Superior Court's summary finding of contempt under Rule 42(a).

 We reject Campbell's arguments. Campbell's disruptive actions and statements on the several occasions when he left and then reentered the courtroom were all part of his continuing refusal to abide by the ruling of the court excluding his client from the proceedings. Campbell went far beyond the bounds of permissible advocacy in responding to this ruling of the

---

**3.** Although *Wilson* and the other federal decisions cited *infra* concern Fed.R.Crim.P. 42(a), "M.R.Crim.P. 42(a) is almost identical to the federal rule of like number." *In re Bernard*, 408 A.2d at 1282 n. 6.

Superior Court. As we have previously stated:

> When the Justice presiding over a trial makes a ruling, or determination, adverse to the position of counsel, "it is not counsel's right to resist it or to insult the judge—his right is only respectfully to preserve his point for appeal."

*In re Steinberger,* 387 A.2d at 1124 (quoting *Sacher v. United States,* 343 U.S. 1, 9, 72 S.Ct. 451, 455, 96 L.Ed. 717 (1952)); *see United States v. Lowery,* 733 F.2d 441, 445–46 (7th Cir.1984); *Local Union 542,* 552 F.2d at 506–09. After objection and vigorous argument had failed, Campbell was bound to accept the exclusion of his client from the courtroom and to continue to represent him in the courtroom, rather than engage in conduct that disrupted the orderly continuation of the trial.[4]

■■■■ Furthermore, Campbell cannot justify his conduct merely by asserting that it was undertaken in good faith. *"McConnell* cannot be read as an immunization for all conduct undertaken by an attorney in good faith representation of his client...." *In re Dellinger,* 461 F.2d at 398. Under the circumstances of this case, Campbell "should reasonably have been aware that his conduct was wrongful." *Local Union 542,* 552 F.2d at 510.

■■■ In summary, Campbell's conduct cited by the presiding justice constituted an actual and willful obstruction of the administration of justice, personally observed by the presiding justice and committed in the actual presence of the court. Although we recognize the importance of zealous representation by counsel, such advocacy may not properly include the "willful ... obstruct[ion] ... of criminal proceedings, ... misbehavior [that] not only brings the court into disrepute but also interferes with the orderly conduct of the court's

business." *In re Bernard,* 408 A.2d at 1282. Campbell's conduct justified the finding of contempt.

### III.

■■■■ There is an inherent tension between summary disposition of a criminal contempt charge and the constitutional guarantee of due process of law. *See Taylor v. Hayes,* 418 U.S. 488, 498–500, 94 S.Ct. 2697, 2703–2704, 41 L.Ed.2d 897 (1974); *In re Bernard,* 408 A.2d 1279, 1282 (Me.1979); Note, *Attorneys and the Criminal Contempt Sanction,* 25 Me.L.Rev. 89, 94–98 (1973). We have acknowledged that "[i]n a summary contempt proceeding ... we have the anomalous situation of judge, jury and prosecutor combined in a single individual." *In re Bernard,* 408 A.2d at 1282. Accordingly, even where there is contumacious conduct sufficient to justify summary punishment—that is, an actual and willful obstruction of the administration of justice, seen or heard by the presiding justice and committed in the actual presence of the court—summary disposition may nevertheless be improper. The circumstances may require notice and a hearing before a different judge pursuant to M.R.Crim.P. 42(b).

■■■■ A hearing before a different judge will be necessary if the trial judge "become[s] embroiled in a running controversy with [the contemnor]." *Taylor,* 418 U.S. at 501–03, 94 S.Ct. at 2704–05; *see* Note, *supra,* at 94–95. In such cases, the conduct of the contemnor, or the trial judge, or both, at trial creates such a likelihood of bias that referral of the contempt charge to another judge is required. *See, e.g., Taylor,* 418 U.S. at 501–03 & n. 10, 94 S.Ct. at 2704–05 & n. 10 (both contemnor and trial judge displayed "marked personal

---

4. We express no opinion regarding whether a court should or must provide opportunities for consultation between a criminal defendant and his attorney when the presiding justice has excluded the defendant from the courtroom. We merely observe that any such right to consultation would not authorize an attorney to wander

in and out of a trial at will, thereby interrupting the proceedings, as Campbell did in this case. Furthermore, as we note above, the appropriate way to challenge an improper denial of such consultation would *not* be through defiance of the court's authority.

feelings" throughout the trial); *Mayberry v. Pennsylvania,* 400 U.S. 455, 463–66, 91 S.Ct. 499, 504–05, 27 L.Ed.2d 532 (1971) (trial judge was "target of [contemnor's] insolence" and "cruelly slandered" by him); *Offutt v. United States,* 348 U.S. 11, 14–17, 75 S.Ct. 11, 13–15, 99 L.Ed. 11 (1954) ("infusion of animosity" in trial judge's treatment of contemnor); *Sandstrom v. Butterworth,* 738 F.2d 1200, 1211–14 (11th Cir. 1984) ("trial judge had a pre-existing and very strongly held dislike for the petitioner"); *cf.* M.R.Crim.P. 42(b) ("If the contempt charged involves disrespect to or criticism of a justice, that justice is disqualified from presiding at the trial or hearing except with defendant's consent."). Not every courtroom confrontation, however, rises to the level of "embroilment." *See, e.g., Farmer v. Strickland,* 652 F.2d 427, 438–39 (5th Cir.1981) (trial judge exhibited "remarkable patience and restraint" and used summary contempt power only as a last resort despite "disrespectful and sarcastic comments made by the attorney"); *Commonwealth of Pennsylvania v. Local Union 542, International Union of Operating Engineers,* 552 F.2d 498, 514 (3d Cir.1977) ("the trial judge exhibited patience and restraint, and … did not engage in wrangling or bickering, and used the summary contempt power only as a last resort"); *In re Buckley,* 10 Cal.3d 237, 256–58, 110 Cal.Rptr. 121, 134, 514 P.2d 1201, 1214 (1973) ("considerable patience and control on the part of a judge faced with repeated impertinences of counsel"); *Naunchek v. Naunchek,* 191 Conn. 110, 119, 463 A.2d 603, 608–09 (1983) (trial judge exercised "considerable control and reasonable restraint in … response to the plaintiff's repeated violations of the court's orders").

Campbell contends that the presiding justice and he became embroiled in a running controversy leading up to the summary finding of criminal contempt. According to Campbell, the contact between the presiding justice and him, and his client as well, created a strong likelihood of bias on the part of the justice against him. Campbell argues that due process requires a plenary hearing on the contempt charge before a different, impartial justice pursuant to M.R.Crim.P. 42(b).

■ Campbell's position is unpersuasive. After a careful examination of the record, we conclude that the presiding justice displayed exemplary patience and restraint in dealing with Campbell's conduct. We are convinced that the presiding justice used the summary contempt mechanism only as a last resort to restore order and dignity in the courtroom. The presiding justice did not quarrel with Campbell or otherwise depart from an appropriate judicial demeanor; nor was he subjected to a personal attack by Campbell that would necessarily call his impartiality into question. The involvement between the presiding justice and Campbell does not require referral of the contempt charge to another justice.

Campbell also contends that a summary proceeding was unnecessary in this case because the punishment for the contempt, a five day jail sentence, was stayed until after the conclusion of his client's trial. Campbell argues that a plenary hearing on the contempt charge before a different justice pursuant to M.R.Crim.P. 42(b) is therefore required.

■ Admittedly, "where *conviction and punishment* are delayed, 'it is much more difficult to argue that action without notice or hearing of any kind is necessary to preserve order and enable [the court] to proceed with its business.'" *Taylor,* 418 U.S. at 498–99, 94 S.Ct. at 2703 (quoting *Groppi v. Leslie,* 404 U.S. 496, 504, 92 S.Ct. 582, 587, 30 L.Ed.2d 632 (1972)) (emphasis added); *see also Codispoti v. Pennsylvania,* 418 U.S. 506, 515, 94 S.Ct. 2687, 2692, 41 L.Ed.2d 912 (1974); *United States v. Lumumba,* 741 F.2d 12, 15–17 (2d Cir. 1984). In the case at bar, however, adjudication of the contempt and sentencing were not postponed. Campbell was punished *during* trial, to preserve the order and dignity of the proceedings, just as surely as

if his sentence had commenced immediately or he had been fined. We "attach ... no special significance to the deferral of the execution of [Campbell's] sentence." *Naunchek*, 191 Conn. at 116, 463 A.2d at 607 n. 6. Rather, we observe that, because Campbell was acting as the trial attorney for a criminal defendant at the time of the finding of contempt and sentencing, "the efficient administration of justice was served by deferring execution until the conclusion of the ... trial." [5] *Id.*

## IV.

"Punishment for criminal contempt is clearly within the sound discretion of the sentencing court." *State v. DeLong*, 456 A.2d 877, 882 (Me.1983); *State v. Alexander*, 257 A.2d 778, 782 (Me.1969). "The seriousness of the consequences of the contemptuous behavior, the public interest in supporting judicial power to maintain order and decorum in the courts of justice and adequate deterrence of future defiance of judicial authority by the [contemnor] and others are all matters for the sentencing judge to take into consideration in his exercise of a sound judicial discretion." *Alexander*, 257 A.2d at 782.

■■■ Campbell contends that his sentence of five days in the county jail is excessive. After examining the record, however, we conclude that, in light of the relevant factors, "the penalty imposed ... bear[s] [a] reasonable relationship to the nature of the contumacious conduct." *Id.* The presiding justice did not abuse his discretion in sentencing Campbell.

The entry is:

Judgment affirmed.

All concurring.