SAMUEL MORRISON *versus* JOHN MCDONALD & *al.*

It seems evident, that the framers of the Constitution of Maine, when providing for the continuance in office of "*judicial officers*," had in view those who to a general intent and purpose were such, and not those who were incidentally and casually entrusted with some attribute of judicial character.

The Recorder of the Municipal Court of the city of Bangor was not, in the sense contemplated by the constitution, a judicial officer; and therefore might be removed from office by the Governor and Council.

The Municipal Court of the city of Bangor is a court of record.

The power to commit for contempts of Court is incidental to all courts of record.

When a person has been duly removed from the office of Recorder, and another has been appointed in his stead, the person so removed commits a contempt of Court by persisting, after full and authentic information that he had been so removed, to exercise the duties of the office; especially after having been ordered by the Judge to desist therefrom.

In such case the Judge has jurisdiction of the subject matter of a commitment.

An action will not lie against a Judge of a court of record for any act done by him in his judicial character, in a matter within his jurisdiction, although in the discharge of the duties of his office there may have been an erroneous judgment, or an illegal commitment.

EXCEPTIONS from the Eastern District Court, CHANDLER J. presiding.

This was an action of trespass, alleging that the plaintiff had been illegally arrested and imprisoned by the defendants, McDonald and Prescott. McDonald justified as Judge of the Municipal Court of the city of Bangor, and Prescott as Recorder of the same court, acting by order of the Judge.

The plaintiff, at the trial in the District Court, produced his commission as Recorder of the city of Bangor, dated March 12, 1838. He then proved, that he was arrested while attempting to discharge the duties of that office, after having been notified of his removal, and committed to prison on a warrant of which a copy follows. "State of Maine. Penobscot, ss. Whereas at a Municipal Court for the city of Bangor, in the county of Penobscot, holden at said Bangor, on the twenty-first day of January, A. D. 1839.

"Reuben S. Prescott appeared with a commission from the Governor, and having been duly qualified as recorder of said Court, and also with a notice from the Secretary of State directed to Samuel Morrison, notifying him that Reuben S. Prescott of Bangor had by the Governor, with the advice and consent of Council, been duly appointed recorder in his stead, and had been commissioned accordingly, which said notice was read by said Prescott in the hearing of said Morrison, and delivered to him in hand by said Prescott. Whereupon the Court directs said Prescott to take charge of the papers and records of said Court, and said Prescott attempting to take charge of the same is resisted by said Morrison, and the said Samuel Morrison refused to deliver up said records and papers to said Prescott, he the said Samuel Morrison claiming to be Recorder of said Court, and not recognizing the authority of the Governor and Council to remove him in the manner they have exercised said authority; therefore the Court order and direct, that the said Morrison be committed to the common jail in Bangor in said county, for contempt of Court by indecent behaviour in thus withholding the records and resisting the Recorder of said Court, and thus insulting said Court and obstructing it in the due and lawful exercise of its duties, against the peace of said State.

Morrison v. McDonald.

" Wherefore in the name of the said State, you are commanded to convey the said Samuel Morrison to the common jail in said Bangor, and there deliver him to the keeper thereof with this precept; and the said keeper is alike commanded to receive the said Morrison into his custody in said jail, and him there keep for want of sureties, or until he be otherwise discharged by due course of law. Witness, John McDonald, our said Judge, at Bangor aforesaid, this twenty-first day of January, A. D. 1839.    · .    R. S. PRESCOTT, Recorder."

It was admitted that Mr. McDonald was Judge of the Municipal Court.

The defendants produced a commission from the Governor, with the advice and consent of the Council, to Prescott, as Recorder of the city of Bangor, dated March 12, 1834, and another from the same to the same, as Recorder, dated Jan. 17, 1839, and proved a qualification on each. They also proved the refusal of Morrison to give up the records, and his resistance in court to Prescott in attempting to discharge the duties of the office. · Each of these commissions, both of Prescott and Morrison, was for the term of four years, unless sooner removed by the Governor and Council.

The presiding Judge ruled, that the action could not be maintained, on the plaintiff's own evidence, and a nonsuit was entered. The plaintiff filed exceptions.

J. Appleton, for the plaintiff, said that this suit was a contest between two individuals to see which was entitled to the office of City Recorder; and insisted that the plaintiff could not be legally removed from the office by the Governor and Council, because he was a judicial officer. By the city charter the Recorder is authorized to act in the place of the Judge in his absence or death in all criminal offences, and has power to try, judge and punish; and is therefore a judicial officer. Const. of Maine, Art. 6, § 4; 1 Salk. 200; 3 Yeate's R. 300.

The Municipal Judge had no jurisdiction of the case. The remedy was by a quo warranto. The People v. Richardson, 4 Cowen, 101; The People v. Tibbits, ib. 380; Comm. v. Fowler, 10 Mass. R. 290; 2 M. & Selw. 75.

Morrison *v.* McDonald.

There was no adjudication in the premises. The imprisonment might have been perpetual. The Judge exceeded his jurisdiction, the imprisonment was illegal, and the defendants are responsible to the plaintiff for the injury. 7 English Com. L. R. 293; 5 Petersd. Ab. 391; Hardres, 480; 2 Wils. 383; 2 Strange, 993; 4 T. R. 424; Cowper, 646. The authority must appear on the face of the warrant. 7 Cowen, 249; 2 Johns. Cas. 49; 10 Conn. R. 521; 9 Eng. Com. L. R. 490; 5 M. & Selw. 314; 21 Eng. Com. L. R. 21. A commitment for an unreasonable time is entirely void. 16 Eng. Com. L. R. 342; 1 Burr. 196; 3 Cranch, 331; 1 Conn. R. 46.

*Hathaway,* for McDonald, supposed it was clear, that Prescott was Recorder, but whether so or not, the action cannot be supported against the Judge. A judicial officer is not responsible for a mere error in judgment, in the discharge of his official duties. The law is well settled on this subject. If such actions can be maintained, judicial officers must occupy very conspicuous places as defendants. *Yates' case,* 4 Johns. R. 317; *Yates* v. *Lansing,* 5 Johns. R. 282; same case, 9 Johns. R. 395; 1 Day's Cas. in Error, 315.

The Judge had jurisdiction of the subject matter, and of the person, and it so appears on the face of the paper. This is sufficient. 1 Mod. 184; 2 Mod. 218. The Judge must decide who was the recording officer of his Court, and it was his duty to proceed in the discharge of the business before him. The Judge was compelled by the conduct of the plaintiff to take the course he did, and is protected by law in so doing.

*A. G. Jewett,* for Prescott, said that if the Judge was protected by law, Prescott, who merely acted under his orders, was protected also. It can be no protection to the Judge, if the persons employed by him, and acting under his orders, are liable. He was the actual Recorder, recognized by the Court. In addition to the cases already brought to the attention of the Court, he cited Judge Peck's case, before the Senate of the

United States, on impeachment for the imprisonment of Lawless; and *Yates* v. *The People*, 6 Johns. R. 237.

Prescott, however, was the legal Recorder. It is not a judicial office. The city charter provides for but one Judge. The Recorder is the mere clerk of the Court, and the plaintiff was appointed and commissioned as such for the term of four years, and subject to removal by the appointing power, and could not be a Judge under such commission. The charter, it is true, provides that the Recorder may discharge some part of the duties of the Judge in his absence. This does not change the character of the office, and make the clerk the Judge. If there be any doubt upon the subject, it is whether the clerk of the Court could legally perform those minor duties of the Judge in his absence.

But if the principle contended for in behalf of the plaintiff· were correct, that the clerk, or recorder of the municipal Court of the city is a judicial officer, it would not aid the plaintiff. If he relies upon his commission, he can hold only for four years, *and during the pleasure of the Governor and Council.* If he relies, that the office is a judicial one, and that the commission, as it is, gives him the right to hold until he is seventy, independent of the appointing power, both conditions are alike inoperative. Prescott, then, having been commissioned as the first recorder, in 1834, would still be in office, and Morrison would never have been legally the Recorder.

The opinion of the Court was drawn up by

WHITMAN C. J. — This case comes before us upon exceptions taken to the order of the Judge, nonsuiting the plaintiff at the trial, for defect of evidence introduced by him in support of his action, which was trespass for false imprisonment. The plaintiff, until immediately before the trespass complained of, had been Recorder of the Municipal Court at Bangor, of which the defendant, McDonald, was Judge; and of which the defendant, Prescott, claimed to have been duly appointed as the plaintiff's successor, exhibiting, at the same time, due notice to the plaintiff that he had been thus removed and superseded.

The plaintiff, nevertheless, insisted, that he had not, and could not by law have been so superseded. The Judge, McDonald, thinking otherwise, directed him to retire from the office, and to desist from exercising its duties; and upon his refusal caused a mittimus to be issued, on which the plaintiff was committed to prison as and for a contempt of Court.

The first question made by the counsel for the plaintiff is, whether the office of Recorder is a judicial office or not; he contending that it is such, and therefore not within the provision of the Constitution, Art. 9, § 6, which is, that "the tenure of all offices, which are not, or shall not otherwise be provided for, shall be during the pleasure of the Governor and Council."

The ground assumed is, that the Recorder, in the absence of the Judge, being clothed with the same powers as the Judge himself is when present, is a judicial officer, and therefore within the description of the Constitution, as it then was, Art. 6, § 4; which provided, that "all judicial officers, except justices of the peace, shall hold their offices during good behaviour; but not beyond the age of seventy years." The tenure of the office of Recorder as to duration, is not prescribed in the act constituting the office. The appointment in this case was for the term of four years, unless sooner removed by the Governor and Council. This appointment, therefore, was not as a judicial officer, and if a Recorder be such, the appointment was not according to the Constitution, and therefore might not be valid.

But we cannot bring our minds to the conclusion that a Recorder is, in the sense contemplated in the Constitution, a judicial officer. It seems evident, that the framers of that instrument had in view those, who to a general intent and purpose were such, and not those who were incidentally and casually entrusted with the exercise of some attribute of a judicial character.

The instances are numerous in which individuals are expected, in connexion with the chief business, characterizing the duties of their appointments, which in the main is in no

wise judicial, to exercise, as incident thereto, casually, some judicial power. Take, for instance, the Senate of the State. That body has judicial powers, in cases of impeachment, but it never occurred to any one that its members were to be deemed judicial officers. The great body of their powers is wholly foreign to any thing of a judicial cast; and they never could have been viewed as judicial officers. Auditors and masters in chancery, in connexion with their ministerial duties, perform sundry acts of a judicial nature. So do the assessors of taxes of our municipal corporations; and commissioners on insolvent estates; and commissioners to adjust controversies for the damage occasioned by flowing lands, under the act concerning [mills, &c; and to make partition of real estate. And, in this connexion, the case of County Commissioners may well be referred to, although it may be believed, that no one would have been surprised, if the legislature had admitted them to be within the purview of the constitutional provision; especially since it has deemed it proper to authorize an appeal, in all cases, in which there can be any litigation before them, between parties, to this Court; when, whatever may be done in the matter of such appeals must be admitted to be of a judicial nature.

If County Commissioners are not to be denominated judicial officers, surely the Recorders of Municipal Courts cannot be.

The next branch of inquiry, presented by the plaintiff, under the exceptions, is as to the authority of the Municipal Court to proceed in the manner it did, to cause him to be imprisoned for a contempt of Court. The Municipal Court of Bangor is a court of record. The power to commit for contempt is incident to all such courts. The plaintiff, who must be regarded as having been duly removed from the office of Recorder, must be admitted to have committed a contempt, by persisting, after full and authentic information, that he had been so removed, in exercising the duties of the office; especially after being ordered by the Judge, to desist therefrom. The Judge clearly had jurisdiction of the subject matter of a commitment in the case. But it is contended, that he did not

proceed regularly in the exercise of such power. It may be that he did not. All the evidence of his proceedings, which the case presents, is contained in the mittimus, by which the plaintiff was committed to prison. Whether there was any record, upon which that instrument was grounded, does not appear. If the plaintiff had not been nonsuited upon his opening, the defendants might have introduced their record of the conviction and sentence. It seems from the mittimus, that the plaintiff, not finding sureties, was ordered to be detained in prison till discharged by due course of law. What sureties he had or could have been ordered to find, or for what purpose, does not appear. And finally there does not seem to be much reason to doubt that there was irregularity in the proceeding of the Court in the affair. But, after all, is the Judge, and his Recorder, who must stand or fall with him, amenable to the plaintiff in this action, on account thereof?

The cases tending to show that they are not, are numerous. *Giverwelt* v. *Burwell & al.*, 1 Salk. 396, and cases there cited ; case of *J. V. N. Yates*, 4 Johns. 317 ; *Yates* v. *Lansing*, 5 Johns. 282. In *Hammond* v. *Howell*, 1 Mod. 184, the Court say, in very emphatic terms, that no action will lie against a Judge for a wrongful commitment, any more than for an erroneous judgment.

In the cases of *Yates*, and *Yates* and *Lansing*, before cited, in the Supreme Court, and Court of Errors, in New York, the learning upon this subject was entirely exhausted. And although the Court of Errors of that State was of opinion, that Lansing, as Chancellor of the State, had no authority to commit Yates, for the cause, and in the manner he did ; yet they held, that the latter could not sustain an action against him therefor.

*Exceptions overruled and nonsuit confirmed.*