In re Joseph STEINBERGER.

Supreme Judicial Court of Maine.

July 10, 1978.

Fitzgerald, Donovan, Conley & Day by Duane D. Fitzgerald (orally) Bath, for plaintiff.

Michael D. Seitzinger (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

On June 14, 1977 defendant Joseph Steinberger, duly licensed to practice law in this State, was acting as the attorney for the defendants in the jury trial of a civil action in the Superior Court (Lincoln County). During the trial, attorney Steinberger was summarily [1] adjudged guilty of contempt of court. He has appealed from that judgment.

We deny the appeal.

The certificate of the presiding Justice narrates these circumstances. The action on trial pertained to a contract for the sale and purchase of a trailer, the trailer having been repossessed and sold after an alleged default of payment. The action sought recovery for the deficiency claimed due as the outstanding unpaid balance of the purchase price. The defendants counterclaimed for statutory damages allegedly arising from the failure of plaintiff to act in good faith. At the conclusion of all the evidence, plaintiff moved for a directed verdict for plaintiff on issues raised by the counterclaim as well as on the question of defendants' liability to plaintiff under the complaint. The presiding Justice considered plaintiff's motion and decided to grant it. Immediately after the noon recess he called counsel into chambers and told them his decision.

The trial resumed, and counsel for plaintiff then gave his closing argument to the jury. Attorney Steinberger rose to make a closing argument on behalf of the defendant. Addressing the presiding Justice, but speaking loudly enough for the jury to hear, he said:

"Is my understanding correct, your Honor, that the jury is not to be permitted to bring a verdict for the defendant[s] in this case but may only bring a verdict for the plaintiff?"

The presiding Justice answered that the understanding was correct. Attorney Steinberger then presented a brief closing argument to the jury,[2] ending it with the statement:

"So, there you have it. You'll have to bring a verdict for the plaintiff, but I hope that you will strike a blow for the

---

1. Rule 42(a) M.R.Crim.P., provides for the summary disposition of a contempt, as follows:
   "A criminal contempt may be punished summarily if the justice certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the justice and entered of record."

2. Although it is not set forth in the certificate of the presiding Justice, the record reveals that defendant began his closing argument by stating: "Well, this is kind of a sad time for me because I wanted to have you be in a position . . . ." The Court then interrupted and cautioned defendant: "The Court has ruled, Mr. Steinberger . . . and you conduct yourself in accordance with the Court's ruling."

jury system and for decency by coming in with a verdict for nothing. Thank you very much."

The presiding Justice thereupon asked the jury to retire to their jury room for a few minutes. He then adjudicated defendant Steinberger in contempt of court,[3] on grounds stated in the certificate as follows:

"The language used by Mr. Steinberger in making this statement was contemptuous of this Court and demeaning to the dignity of the Court for it could only be interpreted as a criticism that the presiding Justice was indecent when he granted the motions of the Plaintiff preventing the Defendants from having the jury find a verdict for them in their counterclaim. The manner in which the words were spoken, the tone of voice, were insulting to the Court and represented a challenge to the integrity of the Court. Mr. Steinberger, by his earlier remark in the presence of the jury, wherein he expressed his bewilderment at the fact that the Court had granted the Plaintiff's motions, and that the Defendants were not entitled to a verdict, was well aware of the fact that this had been the result of the Court's decision on the Plaintiff's motions, and that his statement to the Court in the presence of the jury was only meant to embarrass the Court and to insult the Court by intimating to the jury that the Court was in error in so ruling."

### 1.

As his first point of appeal, defendant contends that the certificate of the presiding Justice is fatally deficient in its statement of the requisite basic facts.

■ To meet constitutional requirements of due process of law the certificate of the presiding Justice must provide an adequate record of the facts underlying a summary adjudication of contempt. *Alexander v. Sharpe*, Me., 245 A.2d 279 (1968). The purpose is

"to present to a reviewing court a full and clear statement of the facts out of which the contempt arose so that that court may determine whether the action of the committing court was within its jurisdiction and whether its action was just or arbitrary." (245 A.2d 288)

■ In support of his attack on the sufficiency of the instant certificate, in particular relation to the certificate's mention of defendant's "manner" while speaking and his "tone of voice" as being "insulting", defendant points to various decisions holding that the certificate must recite with specificity the facts which underlie the ultimate conclusory findings on which the adjudication of contempt rests. See, e. g., *Parmelee Transportation Co. v. Keeshin*, 294 F.2d 310 (7th Cir. 1961); *Parmelee Transportation Co. v. Keeshin*, 292 F.2d 806 (7th Cir. 1961); rev'd on other grounds sub nom. *In re McConnell*, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962).

■ In each of these cases the certificate made a generalized conclusory statement that the manner, tone of voice and attitude of the defendant were contumacious, but gave no supporting particulars. Here, however, the certificate does not purport to assert defendant's "insulting" manner and tone of voice as such to be the contumacious conduct, but mentions it only as one aspect of a larger matrix of circumstances, including the specific words spoken by defendant. All of these circumstances are specifically described in the certificate as the totality constituting defendant's contumacious conduct. In such a context it is appropriate, and helpful, that the certificate characterize defendant's manner of address and tone

---

**3.** After making the contempt adjudication, the Justice had the jury brought back to the courtroom and he proceeded to instruct the jury on the civil action. In the course of the instructions the Justice gave a curative instruction as to the remarks of defendant Steinberger. After the jury returned a verdict and was discharged the Justice indicated to defendant that he would dispose of the contempt matter the following day. At defendant's requests, however, the case was continued for sentencing on two occasions. On July 20, 1977, the presiding Justice filed the contempt certificate, afforded defendant an opportunity for allocution, listened to the arguments of defendant's attorney and ordered defendant to pay a fine of $500.00.

of voice.[4] As we said in *State v. Alexander,* Me., 257 A.2d 778, 781 (1969):

"The purpose of the certificate . . . is precisely to get as full a picture as words can portray of the contemptuous conduct. The stenographic record will not pick up such elements of in-court misbehavior as rude and disrespectful tone of voice or manner of address, nor the shaking of one's finger at the court in a belligerent way. The complete depiction of the courtroom scene must be left to the justice's ability to reflect the same in his certificate and its reliability must be placed on his fairness and objectivity."

The certificate sufficiently stated the particular facts which were the basis of the contempt adjudication.

### 2.

In his only other point of appeal, defendant argues that as a matter of law his conduct was not contemptuous.[5] Defendant relies on language in *In re McConnell,* 370 U.S. 230, 236, 82 S.Ct. 1288, 1292, 8 L.Ed.2d 434 (1962), that

". . . arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty."

Assessing defendant's conduct by the *McConnell* criterion for which defendant contends, we find that the instant certificate may reasonably be taken as stating that defendant had obstructed the presiding Justice in the discharge of his judicial functions, and such finding was justified. When the Justice presiding over a trial makes a ruling, or determination, adverse to the position of counsel,

"it is not counsel's right to resist it or to insult the judge—his right is only respectfully to preserve his point for appeal." *Sacher v. United States,* 343 U.S. 1, 9, 72 S.Ct. 451, 455, 96 L.Ed. 717 (1952)

With this in mind, the presiding Justice had good reason to believe that by the totality of his conduct, as described in the certificate, defendant was asking the jury to manifest disapproval of the Justice's denying the jury opportunity to decide whether defendants should be found liable to plaintiff. Defendant Steinberger thus impeded the presiding Justice in the exercise of his judicial function, and prerogative, to have the jury accept without reservation the law as he had given it. This was an obstruction of the orderly administration of justice constituting contumacious conduct. See *Alexander v. Sharpe,* supra at 283, 284; cf. *In re Holbrook,* 133 Me. 276, 280, 177 A. 418 (1935).

The entry is:

Appeal denied.

Judgment affirmed.

---

4. Defendant argues in addition that the further reference in the certificate to "the general demeanor of counsel throughout the trial" was too general and conclusory to provide a basis for appellate review. We are satisfied, however, from the other language in the certificate and the language of the presiding Justice at the time of the contempt adjudication that the ref-

erence to general demeanor was surplusage which did not play any part in the adjudication of contempt.

5. Defendant raises no question about the Justice's resort to summary proceedings to dispose of the contempt here at issue.