**STATE of Maine**

v.

**Tammy DeLONG.**

Supreme Judicial Court of Maine.

Argued Jan. 10, 1983.

Decided Feb. 28, 1983.

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Hall, DeSanctis & Schultz, Julio DeSanctis, III (orally), Bangor, for defendant.

Before McKUSICK, C.J., and CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

During a jury trial in Superior Court (Penobscot County), the presiding justice found the defendant in this appeal, Tammy DeLong, in direct contempt of court and sentenced her to seven days in the Penobscot County Jail. The defendant appeals the action of the trial justice. We deny the appeal.

Tammy DeLong, age 15, is the alleged victim of gross sexual misconduct and unlawful sexual contact by her adoptive father, Larry DeLong.. Tammy DeLong testified on the State's behalf before the grand jury and at a hearing on a motion to suppress. On August 18, 1982, Tammy DeLong was subpoenaed to testify at Larry DeLong's trial.

On August 23, 1982, after a jury was sworn, the trial justice excused the jury and called Tammy DeLong to the witness stand. The prosecutor and defense counsel had informed the justice that Tammy did not want to testify at the trial. The justice inquired of her concerning her desire not to testify. The justice explained the importance to the State and to Larry Delong of proceeding with the trial. The justice also informed her that a refusal to testify would be contempt of court and would be punishable by up to six months in jail.

Tammy DeLong stated to the justice that she would not testify. She gave the justice two letters, one written by her, explaining why she had decided not to testify, and one written by the DeLong family physician, recommending that she be excused from testifying to avoid further "emotional scars." She maintained her refusal to testify and pleaded the fifth amendment. The justice then appointed counsel for her and again explained the consequences of her refusal to testify. The prosecutor informed the justice that Marie DeLong, wife of Larry DeLong, and natural mother of Tammy, also did not intend to testify. The justice appointed counsel for Mrs. DeLong.

After an opportunity to consult with appointed counsel, Tammy DeLong was again called to testify. She adamantly refused to respond to questions and stated: "I don't want to testify because I love my father and I've forgiven him for what he done to me." The justice ordered her to answer the prosecutor's questions. After her continued refusal, the justice found her in direct criminal contempt of the court.

Her counsel disavowed any legal justification for her refusal to testify or for her claim of a fifth amendment privilege. Counsel did request that the justice either permit Tammy DeLong not to testify or allow time for a psychiatric examination and hearing on the issue. The justice refused these requests and sentenced Tammy DeLong to seven days in the county jail. Her counsel immediately filed an appeal and moved for a stay of execution and for admission to bail. Bail was set. Because Tammy's mother was also found to be in contempt of court, the justice committed Tammy to the custody of the Department of Human Services pending appeal.

On August 24, 1982, the trial of Larry DeLong resumed. Tammy DeLong maintained her refusal to testify. Her mother did testify during the second day of trial and the judgment of contempt against her was stricken. Due to the unavailability of Larry DeLong, the justice granted a mistrial. Tammy's counsel then moved for a reduction of her sentence for contempt; the justice denied the motion. The justice granted the request to remove the special condition of bail, which placed her in the custody of the Department of Human Services, and committed her to her mother's custody.

The defendant, Tammy DeLong, challenges both the judgment of contempt and the sentence imposed. Although we agree with none of these contentions, we discuss each briefly.

### I. Jurisdiction

The defendant first challenges the jurisdiction of the Superior Court to enter a judgment of contempt against a juvenile because the District Court, acting as the Juvenile Court, has exclusive jurisdiction of juveniles alleged to have committed juvenile crimes. 15 M.R.S.A. § 3101(1) (1980). We think that the Juvenile Code does not require that conclusion and that the policy underlying criminal contempt will not permit that conclusion.

The Commentary to section 3104 concerning jurisdiction of the Juvenile Code notes that the Juvenile Code, unlike the predecessor statute, contains no provision for contempt powers. 15 M.R.S.A. § 3104, Commentary (1979). Although the Commentary concludes that "the juvenile court presumably has contempt powers," the basis for the conclusion is found in the inherent contempt powers of courts of record. *See* 4 M.R.S.A. § 151 (1979). The conclusion is not based on any consideration of the exclusivity of the jurisdiction of the Juvenile Court. The Commentary seeks to establish that the Juvenile Court *should* be permitted to exercise contempt powers "[b]ecause the juvenile court is functionally the District Court," and does not establish that *only* the Juvenile Court has such contempt powers concerning juveniles.

Maine authority has established that courts of record have inherent contempt power. *In Re Holbrook,* 133 Me. 276, 283, 177 A. 418, 420 (1935); *Morrison v. McDonald,* 21 Me. 550, 556 (1842); Glassman, *Maine Practice,* § 42.1 at 384 (1967). In addition, 4 M.R.S.A. § 114 (1979) expressly provides that the Superior Court may punish for contempt. A commonsense consideration of the policy underlying the concept of contempt of court reveals that no one court can exercise exclusive jurisdiction over contempt proceedings. Under M.R. Crim.P., Rule 42(a),[1] a court may summarily

---

1. M.R.Crim.P., Rule 42 provides:

   (a) Summary Disposition. A criminal contempt may be punished summarily if the justice certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the justice and entered of record.

   (b) Disposition upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the justice in open court in the presence of

punish a criminal contempt if the conduct constituting the contempt was committed in the presence of the trial justice. This power of a court is directed toward misbehavior that brings that particular court into disrepute and that interferes with the orderly conduct of that court's business. *In Re Bernard,* 408 A.2d 1279, 1282 (Me.1979). The power is used only in "exigent circumstances," when "summary vindication of the court's dignity and authority [is] necessary." *Bernard,* 408 A.2d at 1282 (citing *Cooke v. United States,* 267 U.S. 517, 534, 45 S.Ct. 390, 394, 69 L.Ed. 767, 773 (1925)).

We refuse to hold that a Superior Court justice who, in the exercise of his informed discretion, determines that a juvenile has willfully interfered with the business of the court, thereby impugning the court's dignity and authority, is without power to act. Such a holding would require removal to the District Court for a hearing, in order to acquaint that judge with the situation. That procedure would utterly emasculate the immediate punishment encompassed in a summary action for criminal contempt, which dispenses with notice and hearing. *Alexander v. Sharpe,* 245 A.2d 279, 282 (Me.1968); *Stern v. Chandler,* 153 Me. 62, 68, 134 A.2d 550, 553 (1957) (quoting *Ex Parte Terry,* 128 U.S. 289, 308, 9 S.Ct. 77, 81, 32 L.Ed. 405, 410 (1888)). Further, that holding would create the anomalous situation of requiring the District, or Juvenile, Court to vindicate an affront to, or interference with, the operation of the Superior Court, rather than permitting the impugned court to rectify the situation. *See Thomas v. State,* 21 Md.App. 572, 573, 578, 320 A.2d 538, 541 (1974) (ruling that only juvenile court has jurisdiction of juvenile contempt "would erode the authority of the judge to conduct court proceedings in

an orderly manner, strip the trial court of its right to deal with contemptuous, disruptive juvenile witnesses ... and throw open wide the door to conduct creating chaotic courtroom conditions.")

We have consistently noted that this extraordinary power "cannot be denied the trial judge in an appropriate case without inviting or causing such obstruction to the orderly and impartial administration of justice as would endanger the rights and safety of the entire community." *Bernard,* 408 A.2d at 1282; *see also Alexander v. Sharpe,* 245 A.2d at 282 ("It has long been recognized that the power of a court to punish summarily for a contempt committed in the presence of the Court is inherent in the nature and constitution of a court and necessary for the court to possess in the exercise of all its other powers.") The beneficiary of a summary criminal contempt action is the court itself; the purpose of the penalty imposed is "punishment for an affront to or disrespect of the law." *Glassman,* § 42.2 at 384 (quoting *Stern,* 153 Me. at 66, 134 A.2d at 552). The rehabilitative processes of the Juvenile Court, 15 M.R.S.A. § 3002, are unnecessary and irrelevant to vindicating the dignity of our courts. *See State v. Wilson,* 409 A.2d 226, 228 (Me.1979) (juvenile guilty of night hunting "not in need of rehabilitative processes of the juvenile court system.")

## II. *Abuse of Discretion*

The defendant next argues that even if the court had jurisdiction to find her in contempt, the court abused its discretion in *summarily* finding the defendant in contempt pursuant to M.R.Crim.P., Rule 42(a). Rather, the defendant argues that the matter should have been considered at a later hearing,[2] as provided by M.R.Crim.P., Rule

the person charged or, on application of an attorney for the state or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The person charged is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a justice, that justice is disqualified from presiding at the trial or hearing

except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

2. The United States Supreme Court has noted:
   Where a court acts immediately to punish for contemptuous conduct committed under its eye, the contemnor is present, of course. There is then no question of identity, nor is a

42(b), thus giving the defendant time to prepare her defense.

A contempt of court has been defined as "any act which is calculated to embarrass, hinder or obstruct the court in the administration of justice or to lessen its authority or dignity." *Holbrook,* 133 Me. at 280, 177 A. at 420. As noted, if the penalty imposed is, in part at least, to punish for the affront to the law, the contempt is criminal. *Stern,* 153 Me. at 66, 134 A.2d at 552. We have previously stated that there are two types of criminal contempt under Rule 42: one committed in the court's presence and those about which the court has no first hand knowledge; in the first type, the court may punish the offender on its own initiative. *Gendron v. Burnham,* 146 Me. 387, 398, 82 A.2d 773, 781 (1951); *see Baker v. Eisenstadt,* 456 F.2d 382, 388 (1st Cir.) (refusal to answer questions in "actual presence" of court is criminal contempt and may be punished summarily), *cert. denied,* 409 U.S. 846, 93 S.Ct. 118, 34 L.Ed.2d 87 (1972).

In *Bernard,* we narrowed the standard for determining whether criminal contempt of court could be punished summarily:

> Because of its penal nature as well as because of its summary character, a proceeding of this type is to be strictly guarded by the courts. Even if the judge regards the misconduct as contumacious, unless the misconduct *actually obstructed the administration of justice in his court,* he must accord the contemnor a plenary proceeding instead of punishing him summarily.

*Bernard,* 408 A.2d at 1282 (emphasis added). In *Bernard,* we found no "willful obstruction of judicial proceedings" because the defendant's abusive remarks to the judge in chambers had no effect on the trial, which "moved speedily to conclusion." 408 A.2d at 1283. The use of the 42(a) summary procedure was, therefore, error in *Bernard.*

By contrast, in *Alexander v. Sharpe,* this Court upheld a summary finding of criminal contempt. The defendant in that case had accused the presiding justice of prejudice in the presence of the jury. The court reasoned that the summary procedure was justified because "[i]ts [the defendant's conduct's] immediate and obvious results were to disrupt the trial ... and to deprive both plaintiff and defendant of an early resolution of their litigation." 245 A.2d at 283 (emphasis added).

In the present case, Tammy DeLong was the victim in three of the five counts charged against Larry DeLong. After her mother also refused to testify, the State requested the remainder of the day to "bring a case together" because "[t]he whole case was laid on—based upon the testimony of those two witnesses and some other real evidence that the State has available to it. We would like time to, if we can, work out a method of introducing that real evidence, if at all possible." The justice denied the request. The State then called to testify the victim of the remaining two counts and counsel conducted a voir dire of the Tammy's sister. The court then adjourned early, at the request of the State. The State had offered no testimony or evidence concerning the counts of gross sexual misconduct and unlawful sexual contact involving Tammy. Absent the subsequent events, which resulted in a mistrial, we are confident that the justice would have been compelled, on motion of Larry DeLong, to acquit him on these counts.[3]

Viewed in this light, Tammy's refusal to testify clearly satisfies the *Bernard*

hearing in a formal sense necessary because the judge has personally seen the offense and is acting on the basis of his own observations. Moreover, in such a situation, the contemnor has normally been given an opportunity to speak in his own behalf.... *Groppi v. Leslie,* 404 U.S. 496, 504, 92 S.Ct. 582, 587, 30 L.Ed.2d 632, 639 (1972) (footnote omitted). In this case, the defendant's attorney was allowed time to discuss the situation with his client and to argue later to the court.

3. After the voir dire of Tammy DeLong's sister, the State inadvertently rested. The defense moved for an acquittal on Counts I, II, and III. Until the State's mistake was acknowledged, the justice was prepared to grant the defense motion.

requirement of conduct that "actually obstructed the administration of justice." Her contemptuous conduct did not simply "disrupt . . . the orderly progress of the trial." *Bernard,* 408 A.2d at 1282. Her actions ended at least the first day of the trial.[4]

### III. *Sentence*

Tammy DeLong argues that the court abused its discretion by sentencing her to seven days in jail. Punishment for criminal contempt is clearly within the sound discretion of the sentencing court. *State v. Alexander,* 257 A.2d 778, 782 (Me. 1969), *cert. denied,* 397 U.S. 924, 90 S.Ct. 930, 25 L.Ed.2d 104 (1970). Because we find no abuse of that discretion, we will not disturb the justice's determination of an appropriate penalty for the contempt.

### IV. *Rule 42(a) Certificate*

The defendant contends that because the justice failed to issue a certificate reciting the facts supporting its order, meaningful review of the action is precluded. Apparently, the defendant reads Rule 42(a) as requiring two separate documents, an order and a certificate.

In *Alexander v. Sharpe,* the Superior Court justice had previously issued a contempt order which stated only that the defendant "had 'been adjudged in contempt of this court by his conduct in open court in the presence of this Court and Jury.'" In remanding the case for the filing of a certificate, we stated that

> The purpose of Rule 42(a) is to present to a reviewing court a full and clear statement of the facts out of which the contempt arose so that that court may determine whether the action of the com-

mitting court was within its jurisdiction and whether its action was just or arbitrary. Here the order of the Presiding Justice states his conclusion but not the facts upon which his conclusion was based.

245 A.2d at 288 (citations omitted).

In *State v. Alexander* and in *In Re Steinberger,* 387 A.2d 1121, 1124 (Me.), *cert. denied,* 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978), we clarified the requirement of certification:

> The purpose of the certificate . . . is precisely to get as full a picture as words can portray of the contemptuous conduct. The stenographic record will not pick up such elements of in-court misbehavior as rude and disrespectful tone of voice or manner of address, nor the shaking of one's finger at the court in a belligerent way. The complete depiction of the courtroom scene must be left to the justice's ability to reflect the same in his certificate and its reliability must be placed on his fairness and objectivity.

*State v. Alexander,* 257 A.2d at 781; *Steinberger,* 387 A.2d at 1124.

*State v. Alexander* and *Steinberger* involved conduct by the defendants that affronted the dignity of the court. The requirement of a specific recital of the conduct that constitutes criminal contempt avoids compelling the appellate court to *infer* from a transcript the basis of the contempt. *Alexander v. Sharpe,* 245 A.2d at 288.

Although this language could be construed to mandate both an order and a certificate, we believe that the purpose of the rule is to provide a basis for appellate review.[5] In order to provide sufficient information for meaningful review, therefore,

---

4. The defendant, Tammy DeLong, suggests that summary action was not necessary because Tammy's mother testified the next day, photographs were admitted, and a mistrial was declared. These subsequent events had no relevance to the justice's finding Tammy in contempt on the previous day. Further, we do not know the impact Tammy's refusal to testify had on the justice's decision to grant a mistrial.

5. In cases in which the order itself is insufficient for review, the remand need not require that the order of contempt be vacated. Rather, the record must be completed by the court providing an appropriate statement of the facts on which the order is based.

Rule 42(a) requires three things: (1) the justice must certify that he saw or heard the contemptuous conduct, (2) the justice must certify that the conduct was committed in the court's presence, and (3) the signed order must recite the necessary facts. Compliance with these requirements will allow the appellate court to determine whether the conduct disrupted the administration of justice and, consequently, warranted the finding of direct criminal contempt.

In this case, there was no separate certificate. The justice's order stated:

> Defendants in these actions were subpoenaed as witnesses in the matter of State of Maine vs. Larry DeLong, a trial currently in progress in this Court. Counsel were appointed for each defendant, and in each case advised the Court that their clients had been advised regarding their responsibilities as witnesses. Each defendant refused, under direct order, to respond to questions by the District Attorney in the presence of this Court. Court finds in each case that this constitutes a direct Criminal Contempt.

The basis of Tammy DeLong's contempt, her refusal to testify, is clear from the order; we need infer nothing from the transcript concerning the conduct. The justice also certified in the order that the contemptuous conduct occurred in the presence of the court. Although the better practice would be for the court to state explicitly that it saw or heard the refusal, the fact that the court did see and hear Tammy DeLong's conduct is an objective fact that is thoroughly documented in the transcript.

■ We find that the order and trial transcript provide a sufficient basis for review. After that review, we conclude that the court did not abuse its discretion in summarily finding Tammy DeLong in criminal contempt of court and in sentencing her to seven days in jail.

The entry is

Judgment affirmed.

McKUSICK, C.J., VIOLETTE and WATHEN, JJ., concurring.

NICHOLS, Justice, dissenting.

I find it abhorrent to send this child to county jail.

The result which today's majority reaches is reminiscent of a long-ago day when children were regularly punished as adults and incarcerated with adults. The result suggests a return to "the dark world of Charles Dickens." [1]

I find almost incredible the majority's assertion, unsupported by authority, that "[T]he rehabilitative processes of the Juvenile Court ... are unnecessary and irrelevant to vindicating the dignity of our courts."

A few jurisdictions have, against different statutory backgrounds, permitted trial courts to punish child witnesses for contempt.[2] However, we live in a more en-

---

1. *See In re Gault,* 387 U.S. 1, 79, 87 S.Ct. 1428, 1470–71, 18 L.Ed.2d 527 (1967) (Stewart, J., dissenting):

    In that era there were no juvenile proceedings, and a child was tried in a conventional criminal court with all the trappings of a conventional criminal trial. So it was that a 12-year-old boy named James Guild was tried in New Jersey for killing Catherine Beakes. A jury found him guilty of murder, and he was sentenced to death by hanging. The sentence was executed. It was all very constitutional.

    *Id.* at 79–80, 87 S.Ct. at 1470–71. Stewart, J., goes on to quote Blackstone:

    Thus, also, in very modern times, a boy of ten years old was convicted on his own confession of murdering his bed-fellow, there appearing in his whole behavior plain tokens of a mischievous discretion; and as the sparing this boy merely on account of his tender years might be of dangerous consequence to the public, by propagating a notion that children might commit such atrocious crimes with impunity, it was unanimously agreed by all the judges that he was a proper subject of capital punishment.

    *Id.* at 80 n. 2, 87 S.Ct. at 1471 n. 2 (quoting 4 Blackstone, *Commentaries* 23 (Wendell ed. 1847)).

2. *See Young v. Knight,* 329 S.W.2d 195 (Ky. 1959); *Re Balucan,* 44 Hawaii 271, 353 P.2d 631 (1960); *Thomas v. State,* 21 Md.App. 572, 573, 320 A.2d 538, 541 (1974).

lightened day and in a state where the Legislature has enacted a Juvenile Code which in sweeping fashion ordains that exclusive and original jurisdiction over all "juvenile crimes" is vested, not in the Superior Court which asserted jurisdiction here, but in the Juvenile Court. Juvenile crimes are broadly defined in that Code to include:

> Conduct which, if committed by an adult, would be defined as criminal by Title 17–A, the Maine Criminal Code, or by any other criminal statute outside that code, including any rule or regulation under a statute . . . .

15 M.R.S.A. § 3103(1)(A) (Supp.1982–1983). Clearly, criminal contempt of court, governed by M.R.Crim.P. 42, a rule promulgated pursuant to 4 M.R.S.A. § 9 (1979), comes within that section.[3]

I conclude that the Superior Court was without jurisdiction to try this child for the offense with which she was charged.[4]

Lack of jurisdiction alone should suffice to dispose of this appeal. We should note, however, certain other errors which are of a substantive nature.

First, the majority is led astray by an ardor for a summary proceeding. Such a proceeding under M.R.Crim.P. 42(a) is the exception; but for a narrow range of cases, a plenary proceeding pursuant to M.R. Crim.P. 42(b) is the rule. "Summary punishment always, and rightly, is regarded with disfavor." *Sacher v. United States,* 343 U.S. 1, 8, 72 S.Ct. 451, 454, 96 L.Ed. 717 (1952). The power to proceed summarily is not something to be invoked in every case, or even in a majority of cases. Instead, as Judge Coffin has put it, it is a power which "must be used with restraint." *Baker v. Eisenstadt,* 456 F.2d 382, 390 (1st Cir.1972). Summary disposition is to be reserved for "exceptional circumstances." *In re Chaplain,* 621 F.2d 1272, 1277 (4th Cir.1980). It is a power not to be routinely employed in contempt cases. Rather, it is a power of "last resort." *Farmer v. Strickland,* 652 F.2d 427, 439 (5th Cir.1981). It was error, I submit, to proceed summarily in this case.

The majority suggests that when a juvenile has "impugned the court's dignity and authority" it would somehow "emasculate the immediate punishment" if the offender were given a hearing before another judge in Juvenile Court. I would respond that a *fair* hearing, and not necessarily an *immediate* hearing, should be the goal. A summary proceeding may sometimes be appropriate, but there is no transcendent value in such a proceeding. The United States Supreme Court has declared,

> "[W]e place little credence in the notion that the independence of the judiciary hangs on the power to try contempts summarily . . . ."

("criminal contempt is and always has been considered a crime").

---

**3.** After *Bloom v. Illinois,* 391 U.S. 194, 208, 88 S.Ct. 1477, 1485, 20 L.Ed.2d 522 (1968), in which the United States Supreme Court held that the jury trial guarantees of Article III and the Sixth Amendment of the United States Constitution apply to criminal contempts, it cannot be disputed that criminal contempt is a "crime.". As Justice Holmes once stated, "contempts are infractions of law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech." *Gompers v. United States,* 233 U.S. 604, 610, 34 S.Ct. 693, 695, 58 L.Ed. 1115 (1914). *See also New Orleans v. The Steamship° Co.,* 87 U.S. 387, 392, 22 L.Ed. 354 (1874) ("Contempt of court is a specific criminal offense"); *United States v. Williams,* 622 F.2d 830, 837 (5th Cir.1980)

**4.** It should be noted that our Juvenile Code expressly and categorically provides:

> If during the pendency of any prosecution for a violation of law, in any court in the State against any person charged as an adult, it is ascertained that the person is a juvenile, or was a juvenile at the time the crime was committed, the court shall forthwith dismiss the case.

15 M.R.S.A. § 3101(3)(A) (1980). Patently, this girl was a juvenile at the time of the commission of the "crime" with which the Superior Court justice was charging her. The Superior Court should have followed this statute and dismissed the case.

*Bloom v. Illinois,* 391 U.S. 194, 208, 88 S.Ct. 1477, 1485, 20 L.Ed.2d 522 (1968).[5]

That Court has frequently acted to safeguard the rights of a contemnor to a fair hearing. For example, a hearing before a second and independent judge is constitutionally required whenever the first judge and the contemnor become "embroiled in a running controversy." *Taylor v. Hayes,* 418 U.S. 488, 501–03, 94 S.Ct. 2697, 2704–06, 41 L.Ed.2d 897 (1974); *Mayberry v. Pennsylvania,* 400 U.S. 455, 465–66, 91 S.Ct. 499, 504–05, 27 L.Ed.2d 532 (1971). For a second example, when a contempt is to be punished by imprisonment of over six months, a jury trial is constitutionally required; such punishment cannot be imposed in a summary proceeding. *Taylor v. Hayes,* 418 U.S. at 495, 94 S.Ct. at 2701; *Bloom v. Illinois,* 391 U.S. at 210, 88 S.Ct. at 1486.[6]

In the case before us, as in those examples, why should not the charge of criminal contempt be heard by a second judge? Under the Juvenile Code, after all, the Legislature has created a separate system for juveniles. Why should the Legislature's benevolent purposes be brushed aside as "irrelevant" to vindicating the dignity of the courts? Important though the dignity of our courts may be, it is not a value to be elevated above sanctity of person or inviolability of property. Offenses by a juvenile against the person or property of another, all would agree, must today be heard in Juvenile Court.

In the second place, I submit that sending this child to county jail violates the guarantees against cruel and unusual punishment provided by both the Maine Constitution and the United States Constitution. Me. Const. art. I, sect. 9; U.S. Const. amends. VIII & XIV.

These important safeguards are not static. Instead they "must draw their meaning from the evolving standards of decency that mark the progress of a maturing society." *Furman v. Georgia,* 408 U.S. 238, 242, 92 S.Ct. 2726, 2728, 33 L.Ed.2d 346 (1972) (Douglas, J., concurring) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)).[7]

In the light of the Legislature's mandate that the offenses of juveniles be dealt with according to the Juvenile Code, no one can gainsay that in this day it is "unusual" punishment to send a child to county jail. I suggest that, measured by "broad and idealistic concepts of dignity, civilized standards, humanity and decency," [8] the incarceration of this girl is "cruel" as well as "unusual."

We have noted heretofore that the State's rehabilitative purposes are tangibly demonstrated in the statutes creating and governing the operation of the Maine Youth Center. *State v. Gleason,* 404 A.2d 573, 582 (Me.1979). There is nothing in the record before us to justify the justice's choice to incarcerate this child in a penal institution for adults.

---

5. If fundamental fairness is our goal, it should not go unnoticed that even before the Superior Court commenced its hearing on the contempt charge, the justice's mind was already made up to the point of telling the little girl, "[A] refusal to testify would be what they call contempt of court, and that is punishable in fact by up to six months in jail."

Although the justice had received a letter from the child's physician indicating that forcing this child to testify might be emotionally damaging, the justice brushed it aside with a remark to the child, "I have to think that jail is going to be worse for you than trial."

When counsel requested a psychiatric examination of the child, the justice dismissed it out of hand, pressing forward instead with a hearing on the charge of criminal contempt.

6. *See generally* Note, *Criminal Contempt in Maine: Constitutionally Protected or Neglected?,* 34 Me.L.Rev. 407 (1982).

7. The Eighth Amendment guarantee against cruel and unusual punishment was relied upon by the court in *Swansey v. Elrod,* 386 F.Supp. 1138 (N.D.Ill.1975), when it issued a sweeping preliminary injunction, removing all juveniles under the age of seventeen from the Cook County Jail.

8. *Swansey v. Elrod,* 386 F.Supp. at 1142 (quoting *Jackson v. Bishop,* 404 F.2d 571, 579 (8th Cir.1968)).

Had it been an instance of *civil* contempt, the justice could have had in mind that during the period of her sentence the contemnor might purge herself of the contempt. This was a case, however, of *criminal* contempt, as the justice made crystal clear. Because the punishment is for past disobedience, sanctions imposed for *criminal* contempt are determinate. The contemnor has no opportunity to purge herself. *Gompers v. Buck Stove & Range Company,* 221 U.S. 418, 442–43, 31 S.Ct. 492, 498–99, 55 L.Ed. 797 (1911); *Town of Nottingham v. Cedar Waters, Inc.,* 118 N.H. 282, 385 A.2d 851, 853–54 (1978).

In the context of this case a sentence to jail has no redeeming value.[9] On the contrary, such a sentence flatly contradicts the "benevolent purposes" of our Legislature in enacting Maine's Juvenile Code. *State v. Gleason,* 404 A.2d at 582.

In the third place, even if the Superior Court had jurisdiction to summarily try this child as if she were an adult, the justice failed to issue the certificate expressly required by M.R.Crim.P. 42(a). That certificate is constitutionally required as a matter of due process. *In re Steinberger,* 387 A.2d 1121, 1123 (Me.1978). Without the certificate, the Defendant and Defendant's counsel cannot be certain of the precise charge asserted, nor can the reviewing court accurately determine whether the action of the committing court was just or arbitrary.

I find it anomalous indeed that in this case of alleged sexual misconduct it is the young victim of that misconduct who now goes off to county jail.

---

9. In choosing among statutorily permissible dispositions, the court should employ the least restrictive category and duration of disposition that is appropriate to the seriousness of the offense, as modified by the degree of culpability indicated by the circumstances of the particular case, and by the age and prior record of the juvenile. The imposition of a particular disposition should be accompanied by a statement of the facts relied on in support of the disposition and the reasons for selecting the disposition and rejecting less restrictive alternatives.
Institute of Judicial Administration American Bar Association, *Juvenile Justice Standards Project: Standards Relating to Dispositions,* 2.1 (Tentative Draft, 1977).